**STATE of Missouri, Respondent,**

v.

**Jerome BROWN, Appellant.**

**No. 51279.**

Missouri Court of Appeals,
Eastern District,
Division Eight.

Jan. 26, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
March 8, 1988.

Application to Transfer Denied
April 19, 1988.

Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

By opinion dated July 23, 1987, this court transferred this cause to the Missouri Supreme Court. On December 15, 1987 the Missouri Supreme Court retransferred the cause to this court for reconsideration in light of *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987).

Defendant appeals from jury convictions for forcible rape, § 566.030, RSMo 1986; forcible sodomy, § 566.060, RSMo 1986; and armed criminal action, § 571.015, RSMo 1986. He was sentenced to an aggregate of twenty-five years' imprisonment. We affirm.

At about 4:00 o'clock in the afternoon on May 21, 1985, defendant, with the aid of a knife, forced victim into a back room at her place of employment. After tying her up and blindfolding her, he first stuck his penis in her mouth and then raped her. After defendant left, victim freed herself and told a caller she had been raped. The caller phoned the police for victim. When the police arrived, victim was hysterical. A police detective showed her seven pictures. Still trembling and sobbing she quickly

looked at the pictures and returned them to the officer without comment. The officer then gave her the pictures a second time telling her to calm down and to take her time looking at the pictures; victim identified a picture of defendant as the man who raped her. The next day she chose defendant's picture when shown three photographs at the police station. Later that day she identified defendant in a four-man lineup. When defendant appeared in the lineup, victim began trembling, shaking and crying.

■ At trial, during direct examination of the police detective, the following occurred:

Q. (by prosecutor) Well, let's start with the first time. what [sic] did you tell her when you showed her the photographs the first time on the day of the rape?
A. Well, I was informed by Third District Officers that they knew a subject who fit the description.

Defendant's lawyer objected on the ground the witness was volunteering information. He asked for a curative instruction to the jury and a mistrial. The jury was instructed to disregard the answer but the mistrial was denied. The detective's volunteered statement was not referred to again during the trial. In his motion for new trial and on appeal, defendant argues the detective's statement was hearsay and that it implied police officers who were not witnesses had information making defendant a suspect. To be preserved on appeal the objection must be made at the trial court. Defendant's objection was not preserved for review. *State v. Jones*, 515 S.W.2d 504, 506 [3] (Mo.1974); *State v. Howard*, 714 S.W.2d 736, 738 [2] (Mo.App.1986). In any event, the detective's statement did not mandate a new trial. *State v. Gilmore*, 681 S.W.2d 934, 942–43 [20–22] (Mo. banc 1984); *State v. Harris*, 622 S.W.2d 330, 335–36 [11] (Mo. App.1981). Point denied.

Defendant's second point, and the seminal issue on this appeal, is that the jury was racially constituted contrary to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986).

Defendant was black. Victim was white. The State used all of its peremptory challenges to strike six of the eight black venirepersons available for the jury. It also struck a black alternate venireperson. The jury as finally constituted had ten whites and two blacks, with the jury foreman being black. The alternate juror was also black. The defendant objected to the jury on racial grounds at the trial. The State at that time did not show the reasons for striking the black venirepersons because such a showing was not then required.

On appeal to this court, defendant injected the *Batson* issue. We remanded the case to the trial court for a hearing on the *Batson* issue.

On April 10, 1987, a hearing was held in circuit court. The prosecutor was sworn and testified as to her reasons for the peremptory challenges. The records of the trial were made a part of the record. The trial court found the State had articulated a "neutral explanation" for its challenges, and the challenges were not made to eliminate members of the black race. Since defendant was a member of a cognizable racial group and the prosecutor used all of the State's peremptory challenges to remove blacks from the venire, the sole issue is whether the prosecutor articulated a neutral position for the State's challenges. *Batson*, 106 S.Ct. at 1723.

The first potential black juror was Jacqueline Laden. The prosecutor struck Ms. Laden from the jury because she had a cousin who had served time in the penitentiary. Her cousin had been convicted for selling drugs. Ms. Laden also had only been at her present job for eight months and came to the court dressed in a t-shirt. The prosecutor felt these factors indicated Ms. Laden was unstable and had little respect for the judicial process. Because Ms. Laden had never served on a jury before, the prosecutor felt Ms. Laden would have a "dim view of the criminal justice system" due to her cousin's experience.

The second venireperson stricken was Geraldine Smith. The prosecutor stated she struck Ms. Smith because Ms. Smith is a nurse. The prosecutor felt since there

would be medical testimony in the case, *i.e.*, testimony concerning the rape kit, Ms. Smith would exercise undue influence on the jury as to the significance of the existing medical evidence and/or the lack of medical evidence.

The third individual removed from the venire panel was Gregory Neal. The prosecutor removed Mr. Neal for several reasons. First, Mr. Neal indicated he wanted to hear from two or three witnesses. The case at bar was basically a one-witness case hinging on the victim's identification of defendant. Moreover, Mr. Neal indicated he wanted to be "absolutely definite" about his decision and thus seemed to show some confusion about the burden of proof. Mr. Neal also indicated he might know the defendant. The defendant looked familiar to him and looked like some of his friends, but he was uncertain as to where or if he knew the defendant. The prosecutor felt that since the case hinged solely on the identification of the defendant by the victim, she did not want someone on the jury who might actually know him or who thought defendant looked a lot like several other individuals, thus weakening victim's identification.

The fourth person removed from the venire panel was Roy Bailey. The prosecutor removed Mr. Bailey because of his belligerent, non-responsive attitude towards the State. Mr. Bailey, on the other hand, was very responsive to defendant's counsel. Mr. Bailey was so non-responsive that the prosecutor described the voir dire of Mr. Bailey as being "like pulling teeth for me to get an answer out of him."

Janice Palmer was the State's fifth peremptory strike. The prosecutor removed Ms. Palmer because she stated she needed more than one witness in order to convict the defendant. The prosecutor attempted to remove Ms. Palmer for cause, but after an extensive voir dire by defendant's lawyer, Ms. Palmer equivocated on her ability to convict with just one witness. The prosecutor struck Ms. Palmer because this particular case hinged on the testimony of one witness—the victim. The prosecutor stated victim's testimony would provide all the elements of the crime; thus, it was crucial to the State's case that the jury members understand if just one witness provided the elements of the crime and the jury believed that witness beyond a reasonable doubt, they could convict the defendant on that one witness's testimony.

The sixth peremptory strike was to remove Corene Robinson. Ms. Robinson's brother had been convicted of forgery, and Ms. Robinson felt her brother had been treated unfairly by the criminal justice system. The prosecutor sought unsuccessfully to strike Ms. Robinson for cause because she felt her brother's experience would bias her. The prosecutor removed Ms. Robinson from the jury because she felt Ms. Robinson would be biased given her brother's experience.

The State's peremptory strike to determine the alternate was exercised against McKinley Williams. Mr. Williams stated during the State's voir dire that his brother had been convicted of drug possession. Mr. Williams stated he had never talked to his brother about this incident and that he had no opinion about the criminal justice system and how it had treated his brother. However, during the defense's voir dire, Mr. Williams revealed that he had lived with his mother and brother for eleven years. The prosecutor removed Mr. Williams from the jury because she felt, given that he had lived with his brother, Mr. Williams was lying when he said he had never talked to his brother about the incident.

There are "any number of bases" on which the prosecutor reasonably may believe it is desirable to strike a juror who is not excusable for cause; however, "the prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Batson*, 106 S.Ct. at 1723–1724 n. 20. The prosecutor's explanation, however, "need not rise to the level justifying exercise of a challenge for cause." *Id.* at 1723.

■ Once the prosecutor provided the trial court with her explanations for striking the prospective jurors, the trial court properly concluded it had been furnished

neutral explanations for striking the black venirepersons. The racial presumption raised by the prima facie case was rebutted. Defendant then had the obligation to show the prosecutor's explanations were merely pretextual. In this case, the only real *portending* evidence of jury selection discrimination was the striking of seven black potential jurors. The trial court then had the duty to determine if the defendant had established purposeful discrimination. *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987).

The finding of no discrimination by the trial court was a finding of fact. We give this finding great deference because of the trial court's opportunity to judge credibility, including that of the prosecutor. The findings of fact will stand unless clearly erroneous. *Antwine,* at 66–67.

■ Defendant attacks the prosecutor's explanation for striking each of the seven black venirepersons. He says some of the reasons were facially improper while others were improper because they were not applied equally to whites on the same panel The existence of similarly situated white venirepersons went to the credibility of the prosecutor's explanations. As such, it was properly an issue for the trial court to consider. *Antwine,* at 65.

■ The trial court conducted a hearing on the *Batson* issue. The prosecutor under oath gave her reasons for her peremptory challenges. The trial court believed her testimony, and we must. Under the mandates of *Batson* and *Antwine* the trial court's finding of no purposeful discrimination was not clearly erroneous.

Judgment affirmed.

SMITH, P.J., and GARY M. GAERTNER, J., concur.