**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Michael HOOD, Defendant–Appellant.**

No. 52214.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 2, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 26, 1988.

Holly G. Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Kurt A. Hentz, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

A jury in the City of St. Louis convicted appellant of manslaughter, and he appeals to this court. The trial court sentenced him as a prior and persistent offender to fifteen years imprisonment. His conviction is affirmed.

In his sole point on appeal, appellant complains that the court erred in failing to quash the jury panel after the prosecutor used five of his six peremptory challenges to remove all of the black venirepersons from the jury panel. He alleges that this action created a prima facie showing of racial discrimination which the prosecutor failed to rebut with legitimate, racially neutral, case specific explanations, thereby, denying the appellant equal protection of the laws.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that a defendant may establish a prima facie case of purposeful discrimination in the selection of the petit jury if he shows: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venirepersons from the jury panel on account of their race. *Batson*, 106 S.Ct. at 1723. In addition, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those who are inclined to discriminate to do so. *Id.*

The recent decision in *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), provides the legal community with some guidance in the interpretation and implementation of the holding in *Batson*. The court explained:

As a practical matter, the third element of the prima facie case under *Batson*—'facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory challenges] to exclude the veniremen from the petit jury on account of their race'— requires the trial court to consider the State's explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case exists.

*Antwine*, at 64.

Although it is a difficult task for the trial court to determine whether an articulated explanation is legitimate or a mere pretext for racial discrimination, the trial court is in the best position to make such a determination. We review the determination of the trial court under the clearly erroneous standard. *Antwine*, at 66. Unless this court in reviewing the evidence is left with the definite and firm conviction that a mistake has been made, a finding is not clearly erroneous. *Knight v. State*, 491 S.W.2d 282, 284 (Mo.1973).

In this case the trial court made no findings with regard to the *Batson* issue. Rather, the court heard the explanation of the prosecutor as to the reasons why he had struck five black venirepersons and then denied appellant's motion to quash the jury panel without further clarification. In light of the recent decision in *Antwine*, we expect trial courts in future cases to pro-

vide us with findings of fact or detailed explanations on the record of the basis for their determination as to whether or not the prosecutor engaged in purposeful discrimination in the selection of the jury panel.

Without such a record in this case, we are compelled to review the entire record of voir dire. The state concedes that appellant is black and that five of six peremptory challenges were used to remove all the black venirepersons from the jury panel. One black alternate remained.

■ The prosecutor stated that his reasons for striking Miss Duncan, a black female, were that she was unemployed, appeared bored and at times to be nodding off or sleepy and answered questions with an "antagonistic spirit." Appellant doesn't deny any of these facts but suggests that they are insufficient to rebut the presumption of racial motivation. Employment is not a prerequisite for a juror. Standing alone, unemployment would not be sufficient reason to strike a juror but coupled with the other reasons given by the prosecutor and the absence of a record by the appellant that repudiates the legitimacy of the reasons, we are unable to find any racial motivation behind the strike.

The second juror struck was Miss White. In our review of the record we note that the trial judge interrupted the voir dire to ask Miss White if she was ill. Although she responded negatively, the prosecutor stated that she appeared to be having difficulty understanding what was being said. This ineptness and the juror's apparent uneasy physical condition are sufficient reasons to show that no racial discrimination was involved in striking this juror.

The third black person struck was Mr. Brim. The prosecutor justified the strike because Mr. Brim lived in a high crime neighborhood and might be influenced by fear to find the appellant not guilty. Additionally, Mr. Brim had been the victim of a mugging which he never reported to the police. The prosecutor felt that this indicated a lack of confidence in the justice system. We note that *"Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive." *Antwine,* at 65. We can find no evidence of racial discrimination in this strike.

The prosecutor struck Mr. Pugh, a security guard, because it was his experience that security guards tend to second guess what the police should or should not have done. The appellant contends that this is irrelevant because the bulk of the testimony in the case came from lay witnesses and the police were not called on to make an extensive investigation. The record, nevertheless, reveals that a police officer did testify, and his testimony and that of the appellant were markedly different. It cannot be said under the circumstances that this concern was unreasonable.

The fifth black juror struck was Miss Blanchard. The prosecutor's first reason for striking Miss Blanchard was suspicious. He stated:

[S]he had indicated that she had just found insufficient evidence to find someone that was on trial for drugs—to find him guilty, and she found him not guilty. It gives me pause. Does she have her mind-set that would predispose her to finding anyone on whose case she sat not guilty? I don't know, but it did raise that question to me.

Nevertheless, the prosecutor added a second, more valid, reason for the strike. He noted that her answers to several questions about prior jury service were unresponsive and that she appeared to have difficulty understanding some simple, straightforward questions that were directed to her by the defense counsel. The voir dire record supports the prosecutor's excuse for the strike.

■ Some additional factors are relevant and merit consideration. No similarly situated white jurors were left on the panel. Moreover, the victim, the defendant and all of the witnesses to the altercation were black. "[T]he fact that the key witnesses for both sides are black 'would discount any advantage that a discriminating prosecutor might perceive in striking blacks

from the jury.' " *State v. Butler*, 731 S.W. 2d 265, 269 (Mo.App.1987) (citing *United States v. Matthews*, 803 F.2d 325, 332 (7th Cir.1986)).

The explanations offered by the prosecutor are clear, reasonably specific and legitimate, and other factors in the case indicate that there would be no advantage to the prosecutor to strike blacks for racial reasons. The trial court's decision is not clearly erroneous. The judgment is affirmed.

STEPHAN, P.J., and DOWD, J., concur.