**STATE of Missouri, Plaintiff–Respondent,**

v.

**Henry Rico PAYTON, Defendant–Appellant.**

**No. 51542.**

Missouri Court of Appeals, Eastern District, Division Eight.

Feb. 9, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 8, 1988.

Application to Transfer Denied April 19, 1988.

Holly G. Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Byrona J. Kincanon, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction of stealing by deceit and his six month suspended sentence imposed therefore.

Defendant and William Jennings were jointly tried for this offense. Jennings was a St. Louis City policeman engaged, at the time of the offense, in secondary employment as a security officer at a bus station. Defendant was a taxi driver. The two were accused of having worked together to obtain money from a recently medically discharged serviceman traveling through St. Louis. The thrust of their actions was

an accusation by Jennings that the passenger had in his possession an illegal drug for which the passenger would be arrested and sent to jail. When Jennings left the room, defendant stated that $100 would pay the fine and the passenger paid him that amount in order to continue his trip. In fact, the passenger was not in possession of any controlled substance and the reasonable inference was that a cube resembling such substance was planted on him by Jennings.

Defendant first complains that he was prejudiced by the trial court's failure to sever his case from Jennings for trial. We find no merit to this contention.

Next defendant complains of the failure of the trial court to quash the venire panel after the prosecutor utilized his peremptory challenges to remove black veniremen from the jury. Defendant has properly preserved the issue. Following trial of the case, but prior to final appellate review, the United States Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). That decision was made applicable to cases "pending on direct review or not yet final" when *Batson* was decided. *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) l.c. 107 S.Ct. at 710. We therefore remanded the case to the trial court for a hearing to "determine the validity of defendant's constitutional claim under *Batson.*" *State v. Payton*, No. 51542 (Mo. App.E.D. Mar. 17, 1987). Pursuant to that order a hearing was held.

Following hearing the trial court found that defendant did not make a *prima facie* showing that the prosecutor used his strikes in a discriminatory fashion. In support of this finding the trial court found that "Not all of the black qualified veniremen were struck from the panel since there were two (2) black persons left on the panel." The court further found that even if a *prima facie* showing was made this showing "was clearly refuted by the prosecutor in the voir dire examination and supplemented in the detailed and neutral explanation for its strikes made at the evidentiary hearing...." The court concluded on its review that race was not the motivating factor in the State's use of its challenges. No more specific findings were made.

*Batson* holds that a defendant establishes a *prima facie* case of discrimination by showing that (1) defendant is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and (3) that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 106 S.Ct. at 1723. Relevant circumstances include a "pattern" of strikes against black veniremen as well as the prosecutor's questions and statements during voir dire examination. *Batson*, 106 S.Ct. at 1723. Once a *prima facie* case has been established, a rebuttable presumption is created of discriminatory challenges and the burden shifts to the prosecution to come forward with a neutral explanation for those challenges. *Batson*, 106 S.Ct. at 1723. The neutral explanation must give a clear and reasonably specific explanation of the State's legitimate reason for exercising the challenges. *Batson*, 106 S.Ct. at 1724 n. 20.

In *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987) our Supreme Court directed that trial judges consider the prosecutor's explanations as part of the process of determining whether a *prima facie* case of racial discrimination has been made. At p. 64. In that case the court addressed the obligation of the trial court:

"*State v. Butler*, 731 S.W.2d 265 (Mo. App.1987) adopts a well-reasoned three-pronged analysis of the trial judge's obligation to assess the explanation provided by the prosecutor.

'First, the susceptibility of the particular case to racial discrimination may be evaluated. [Citations omitted]. The court may consider the race of the victim and primary witnesses. For example, the fact that the key witnesses for both sides are black "would discount any advantage that a discriminating prosecutor might perceive in strik-

ing blacks from the jury." [Citation omitted]. Second, the prosecutor's demeanor may be relevant. [Citations omitted]. Is the prosecutor "engaging in a process of careful deliberation based on many factors" during voir dire or has he failed to "engage these same jurors in more than desultory voir dire or indeed to ask them any questions at all?" [Citation omitted]. Finally, the trial court should evaluate the explanation itself.'

'... As to the third *Butler* prong, the court properly suggests that objective criteria are available to evaluate the explanation offered by the State. The trial judge should consider whether similarly situated white veniremen escaped the State's challenges. The trial court should also consider the reliance of the State's justification for challenging a particular veniremen to the kind of crime charged, the nature of the evidence to be adduced by both parties and the potential punishment which a guilty verdict may produce.' " At pp. 64, 65.

There is room for legitimate "hunches" by the prosecutor so long as racial discrimination is not the motive. But *Batson* is not satisfied by "neutral explanations" which are no more than facially legitimate, reasonably specific and clear. *Batson* is not intended to be a charade. *Antwine*, at p. 65.

Upon review *Antwine* also establishes certain guidelines. A finding concerning discrimination is a finding of fact. We must give that finding great deference. We can set it aside only if clearly erroneous. A finding is clearly erroneous when although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Antwine*, at pp. 65, 66.

We turn to the record before us. Both defendants were black; the victim was white. The case turned primarily on the credibility of those witnesses. There were forty-one qualified veniremen prior to the exercise of the state's peremptory challenges. Of that number fifteen were black, twenty-six were white. The state utilized twelve of its challenges to remove blacks.[1] The jury selected was originally eleven white and one black, and the final jury, after substitution of the alternate for a sick juror was ten and two.

We reject the trial court's reasoning in its finding that no *prima facie* case of discrimination was made. It is not necessary that the prosecution utilize all its strikes to remove blacks, or that it utilize all strikes necessary to remove all blacks to find a "pattern" of strikes sufficient to establish a *prima facie* case. The harm from discriminatory jury selection is an undermining of public confidence in the fairness of our system of justice. *Batson*, 106 S.Ct. at 1717. Tokenism does not alleviate that harm.[2] A disproportionate utilization of strikes against blacks where the defendant is black and the victim white is a relevant circumstance which may be sufficient to establish the *prima facie* case. Thirty-six percent of the venire panel was black. The prosecution used 85% of its strikes against blacks. It utilized 15% of its strikes against the 64% of the panel which was white.

At trial the prosecutor gave no explanation for his strikes and under the *pre-Batson* law was not required to.[3] At the posttrial hearing the prosecutor set forth reasons as to each venireman stricken. Three of the strikes were based upon the venireman having heard or read about the case in

---

**1.** The record is not clear whether the prosecution used ten or eleven of its original twelve challenges to remove blacks from the main jury and one or two of its two challenges to remove black alternates. It is clear it used twelve of its fourteen challenges to remove blacks.

**2.** In *State v. Crump*, 747 S.W.2d 193 (Mo.App.E. D.Jan. 12, 1988) we recognized that there are certain realistic practical limitations to the availability of *Batson* challenges. Those limitations are not present here.

**3.** While not giving an explanation for the strikes, the prosecutor did suggest, "I would just briefly add that Mr. Curran alluded to the fact that some of his strikes were Jurors who had not said anything, and I would just suggest that may in itself have been one of the reasons for my making that peremptory strike."

the media. The prosecution struck either for cause or peremptorily all veniremen with such knowledge. The explanation given for those strikes is a "neutral" explanation. One venireman was stricken because she found it inconvenient although not impossible to serve as a juror. That is also a non-discriminatory justification. One venireman was stricken because he was a postal worker and the prosecutor stated he always strikes postal workers, white or black. We defer to the trial court's assessment of the credibility of the prosecutor as to this venireman.

Three veniremen were stricken for what were expressed by the prosecutor as demeanor matters. This explanation should be closely examined by the trial court. These veniremen were asked no individual questions by the prosecutor as was also true of the postal worker. One was viewed as indecisive when the prosecutor believed she had started to raise her hand and then denied she had done so. One was stricken because he was bored and apathetic. He was asked no individual questions by any counsel. One venireman was asked a single individual question by defense counsel but none by the prosecutor. The prosecutor concluded he did not respond to questioning. The record does not establish any non-response to a question addressed to him or the panel which justified a response. However, the trial court is in a position to determine the venireman's demeanor and we are not. We therefore defer to the trial court as to those veniremen. The failure, however, to question the black veniremen is a circumstance to be considered in determining whether a *prima facie* case has been established, and in evaluating the neutral explanations offered for all the challenges. *Antwine, supra,* at p. 65.

Much of the prosecutor's questioning dealt with the relationship between veniremen and the police, including personal relationships with police officers. These were case specific inquiries inasmuch as one of the defendants was a police officer. Because of this the usual situation was reversed and the belief of honesty in all police officers became a detriment to the prosecution. One of the veniremen stricken because of media exposure was also stricken because he was a close friend of a police officer. Numerous white veniremen with similar friendships were not challenged. While the challenge was permissible on the first ground, the second ground evidences disparate treatment of similarly situated veniremen and that explanation must be considered in evaluating the prosecutor's overall justification for his challenges. One black venirewoman was stricken because she was a liquor store owner and the prosecution thought she might have frequent dealings with police and did not want to "take a chance." The venirewoman made no response to the general question concerning friendship with police. She was asked no individual questions by the prosecutor. In response to defense questions she stated she still owned the liquor store. She also stated she had had a relative arrested but had no bad feelings concerning the incident. The record contains no other statements by her during voir dire. Given the extensive questioning of veniremen concerning their relationships with police and the prosecutor's expressed belief in the importance of determining such relationships the failure to make any inquiry of this venirewoman is a relevant consideration in evaluating his asserted reason for striking her and the making of a *prima facie* case. *Antwine, supra.*

Two venirewomen were married to police officers. The black was stricken solely for that reason. The other, white, was not and served on the jury. One additional black venirewoman was stricken because she was related by marriage to a high ranking police officer. The prosecutor felt she expressed some reservations about her ability to be objective because of her high regard for her relative. Her answer does not clearly reflect such reservation. The white venirewoman married to a police officer expressed her reservations more strongly. She stated because a police officer was involved she would rather not be on the jury; she stated she could accept the possibility that a police officer could commit a crime but it would be difficult. The black

venirewoman married to a police officer expressed no such reservations. A black venirewoman whose brother was a police officer was also stricken because of that relationship. She also expressed no reservations about her ability to fairly judge the police defendant. The prosecutor made no attempt to explain the difference in treatment between the four women. The reason given for striking the black venirewomen is a legitimate one given the nature of the case. But it is equally legitimate as to the white venirewoman who served on the jury. We are unable to find any basis in the record for the difference in treatment accorded these venirewomen. Disparate treatment of veniremen similarly situated is a circumstance to be considered by the trial court in assessing the validity of the prosecution's "neutral explanation." *Antwine, supra.*

In this case we have defendants who are black, a victim who is white, a prosecutor who used his peremptory challenges to remove members of the defendant's race from the venire, a pattern of strikes reflecting disproportionate utilization of peremptory challenges against blacks, an absence of individual questioning of blacks against whom challenges were invoked, and disparate treatment of veniremen similarly situated. These are sufficient relevant circumstances to establish a *prima facie* case of discriminatory use of peremptory challenges by the prosecution. *Antwine, supra.*

 A *prima facie* case having been established, the burden shifted to the prosecution to come forward with neutral explanations for the strikes to overcome the presumption of discrimination created by the *prima facie* case. *Batson, supra.* 106 S.Ct. at 1723; *Antwine, supra,* at p. 63. Those explanations must be more than facially legitimate, reasonably specific and clear. *Antwine, supra,* at p. 65. The record before us does not establish that the prosecution met that burden. While the reasons given meet the facially legitimate, reasonably specific and clear test, the prosecution gave no explanation for the failure to make meaningful inquiry of veniremen

challenged or of the disparate treatment accorded similarly situated veniremen. Defendant specifically raised these matters in responding to the prosecutor's explanations for his challenges, thereby pointing out the pretextual nature of the explanations. There was no evidence presented to the trial court to rebut the presumption created by the *prima facie* case. It was error for the trial court to find the absence of a *prima facie* case and to find overall that the explanations given rebutted the *prima facie* case which was made.

Judgment is reversed and the cause remanded for new trial.

GARY M. GAERTNER, J., concurs.

CRIST, J., concurs in result.