**STATE of Missouri, Plaintiff–Respondent,**

v.

**Graylon HERRON, Defendant–Appellant.**

No. 53076.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 23, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Graylon Herron, appeals from a conviction, after a jury trial, of illegal possession of a Schedule II controlled substance, Phencyclidine. Defendant was sentenced to five years' imprisonment; execution of the sentence was suspended and he was placed on probation for five years. We remand.

Because defendant does not challenge the sufficiency of the evidence, we briefly

review the facts of this case. On May 3, 1986, a St. Louis police officer observed three black men in the vicinity of 1639 Carver Lane in St. Louis. As the officer approached the group, two men turned and ran away. Defendant walked toward the officer and dropped two glass bottles on the sidewalk. The officer picked the bottles up from the sidewalk, opened the bottles, smelled them, and determined that the bottles contained a controlled substance. The officer stopped defendant and placed him under arrest. A police department laboratory analysis determined the contents of the two bottles to be Phencyclidine.

The record discloses that there were eight black members of the thirty-six member jury panel. After the court accepted each party's challenges for cause, the prosecutor used five of his six peremptory challenges to strike the five remaining black venirepersons. Defense counsel challenged the prosecutor's peremptory strikes on the grounds of purposeful discrimination pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor then briefly indicated his reasons for striking the black venirepersons as follows: number 164 was stricken because of his demeanor; number 433 was stricken because he had been arrested for possession of a gun; number 7 and number 426 were stricken because the prosecutor felt they did not respond adequately to his questions; number 9 was stricken because her son had been arrested for assault as a juvenile. Defense counsel countered that the State's explanations as to numbers 7 and 426 were, in effect, pretextual, stating that "they were asked very few questions by the State." Thereafter, the trial court denied defense counsel's request to quash the jury panel. As a result, defendant was tried and convicted before an all-white jury.

Defendant claims the trial court erred: (1) by giving an erroneous instruction, and (2) by overruling defendant's motion to strike the jury panel.

We first address defendant's claim that the trial court erred by overruling defendant's motion to strike the jury panel after

the State used five peremptory challenges to remove all remaining black venirepersons from the jury panel. Defendant argues that the State's action created a prima facie showing of racial discrimination which the prosecutor did not rebut with race neutral, case specific and legitimate explanations.

It has been the law of the land for more than a century that purposeful racial discrimination in selection of jurors violates a defendant's right to equal protection. *Strauder v. West Virginia*, 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880). *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), provided that in order to prove racial discrimination in the jury selection process, a defendant had to establish a pattern under which the prosecutors in that jurisdiction were responsible for striking blacks from jury panels in case after case. This put an almost impossible evidentiary burden on the defendant. *Batson* now provides a feasible method by which a defendant can prove purposeful discrimination under the facts of his case without resort to outside data. As such, it articulates new evidentiary standards rather than new constitutional principles.

*State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), provides guidance to trial courts in deciding *Batson* issues and defines the appropriate standard of appellate review of *Batson* questions. Both *Batson* and *Antwine* have been discussed at length in a number of recent Missouri appellate opinions. We therefore decline to repeat the in-depth analysis set forth in those cases. *See, e.g., State v. Brown*, 747 S.W.2d 261 (E.D.Mo.App.1988); *State v. Jones*, 747 S.W.2d 229 (E.D.Mo.App.1988); *State v. Hood*, 745 S.W.2d 785 (E.D. Mo.App.1988); *State v. Payton*, 747 S.W.2d 290 (E.D.Mo.App.1988).

■ The prosecutor in this case used his peremptory challenges to eliminate all blacks from the jury panel. In particular we note that venirepersons 7 and 426, who are black, were stricken because the State did not feel that they responded adequately to the questions asked them. The general questions of the State to the prospective

jurors did not require a negative response if the question did not pertain to the particular venireperson. Additionally, the record reveals that venireperson 7 was asked no direct questions. Venireperson number 426 responded completely to the State's only questions directed to her regarding her employment and her marriage status. The failure to question black venirepersons is a circumstance to be considered in determining whether a prima facie case has been established in evaluating the neutral explanations offered for all challenges. *Antwine,* at 65.

 We would also point out that venireperson number 433 was stricken because he said he had been arrested for possession of a gun. However, a white venireperson, number 116, was left on the jury even though he stated he had been arrested for theft. Whether similarly situated white venirepersons escaped the State's challenges is one of the objective criteria for the court to consider in determining if the state engaged in purposeful discrimination. *Antwine,* at 65.

*Batson* is not satisfied by neutral explanations which are no more than facially legitimate, reasonably specific and clear. *Antwine,* at 65. The Supreme Court did not intend a charade when it announced *Batson. Id.* It is incumbent on the trial judge to carefully consider many factors and to "assess the entire milieu of the voir dire objectively and subjectively." *Id.* at 65.

On appeal, we give great deference to the trial court's findings of fact which will not be set aside unless clearly erroneous. *Antwine,* at 66.

 In this case the trial court made no findings with regard to the *Batson* issue. Rather, the court simply denied defendant's motion to quash the jury panel without further clarification. In light of the decision in *Antwine,* trial courts are expected to provide findings of fact or detailed explanations on the record of the

basis for their determination as to whether or not the prosecutor engaged in purposeful discrimination in the selection of the jury panel. *State v. Michael Hood,* 745 S.W.2d 785 (1988).[1] Only then can there be any meaningful appellate review.

Accordingly, we remand this case for further findings as required by *Antwine.* In view of our holding we decline to address, at this time, defendant's claim of instructional error.

SIMON, P.J., and GRIMM, J., concur.

---

1. In *Hood,* this court gratuitously undertook an analysis of the record where the trial court had failed to make findings. In *Hood,* unlike the case *sub judice,* there were readily discernible reasons in the record for the prosecutor's peremptory challenges of blacks and an absence of a record by defendant that repudiated the legitimacy of those reasons.