763 S.W.2d 286 (1988)
STATE of Missouri, Respondent,
v.
Darryl PRICE, Appellant.
No. 50317.
Missouri Court of Appeals, Eastern District, Division Two.
November 29, 1988.
Motion for Rehearing and/or Transfer Denied January 4, 1989.
Application to Transfer Denied February 14, 1989.
*287 Henry B. Robertson, Asst. Public Defender, St. Louis, for appellant.
William L. Webster, Atty. Gen., Kevin B. Behrndt, Asst. Atty. Gen., Jefferson City, for respondent.
Motion for Rehearing and/or Transfer to Supreme Court Denied January 4, 1989.
GRIMM, Presiding Judge.
In this jury tried case, defendant appeals his convictions of capital murder, in violation of § 565.001, RSMo 1978, and two counts of assault in the first degree, in violation of § 565.050, RSMo 1978. Defendant was sentenced to life in prison without eligibility for parole for fifty years on the murder count, and to two thirty-year sentences on the assault counts, all to run consecutively.
Although defendant's brief states five points relied on, one point disposes of the appeal and requires remand for a new trial. That point, as originally raised, is that the trial court erred in overruling defendant's motion to quash the jury panel after the State used five of its six peremptory challenges to strike blacks.
The procedural history reveals that defendant was tried in April 1985[1], and on August 12, 1986, this court issued its opinion affirming the defendant's convictions. Among other issues, defendant claimed violation of his rights under the sixth and fourteenth amendments to a jury selected from a cross-section of the community. In denying this claim, our majority opinion concluded that Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which was decided April 30, 1986, applied only prospectively. Defendant's claim, therefore, was reviewed under the Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) standard, and denied.
On January 13, 1987, the United States Supreme Court, in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ruled that Batson was applicable to all cases pending on direct appeal as of the date of the Batson decision, i.e. April 30, 1986. Based on Griffith, on January 29, 1987, defendant moved to have this court recall its mandate and order a hearing on the Batson issue. The mandate was recalled, and the case was remanded to the trial court "to hold an evidentiary hearing to determine whether appellant's constitutional challenge is valid under the Batson standard."
The trial court was directed to make findings and conclusions on two issues. First, "whether appellant has established a prima facie case of purposeful discrimination," and, second, "whether the State has presented a neutral explanation for using its peremptory challenges to strike black venirepersons."
The trial court complied with the directives given. In its order, the trial court found "that a prima facie case was established that the State used its peremptory challenges to strike black venirepersons in violation of the doctrine established in Batson v. Kentucky." In addition, the trial *288 court found that the assistant circuit attorney could not "state a clear and reasonably specific explanation for each of his peremptory challenges of the black venirepersons."[2] Thus, the trial court concluded that the challenges did "not comport with the present requirements and standards for voir dire in a criminal case under the rule announced in Batson."
The trial judge found that the defendant was black and the State used five of its six peremptory challenges to strike blacks. The sixth strike was an Asian woman. The trial judge noted that he was faced with the fact that the State did not strike a white person, and that "seven out of eight of his strikes [including alternates] were black."
The defendant used two of his peremptory challenges to strike blacks. The final composition of the jury was two blacks and ten whites. Neither of two alternate jurors served. Saying that "the impact of the State's actions in making its selection of alternates is limited," the trial judge observed that the State used its two strikes for alternate jurors on blacks; the venire for alternates included two whites.
As previously noted, five blacks were stricken by the State. With a summation of the State's explanation of its strike and the trial court's ruling, they were:
1. Lois Jackson. State's explanation was that she had a relative in jail. Judge agreed that venireperson's with relatives "in jail cannot be presumed to be favorable to criminal prosecution of any one. However, there were three white persons with relatives before the bar of justice and they were not struck."
2. Michelle McDaniel. State's explanation was that she was young and a federal employee; "I try to avoid Federal employees regardless of race." Trial court stated that it did "not agree that all Federal employees are from the point of view of the State unfavorable venirepersons."
3. Derrick Bogan. State's explanation was that this juror was a young black man, not married, on present job one year, and that defendant was a young black man. Trial judge did not "necessarily quarrel" with the strike, saying that the State often looks for people who are established in the community.
4. Wilmette Hawkins. State's explanation was that she was a school teacher and he strikes almost all teachers because they are too sympathetic to people, including defendants. Trial court did not quarrel with this strike, saying that "[h]is thought that they would tend to be sympathetic to a defendant is not without merit."
5. Terrie Hemphill. State's explanation was that many Hemphills had been prosecuted through the years. Although not knowing if related to those Hemphills, State struck out of caution. Trial judge did not quarrel with this decision.
The State first argues that the defendant does not have standing to raise an equal protection challenge, since two blacks sat on the jury. In support of that argument, it cites State v. Crump, 747 S.W.2d 193 (Mo.App.E.D.1988).
As we read Batson and State v. Antwine, 743 S.W.2d 51 (Mo. banc 1987), the requirements and procedure to establish a prima facie case of purposeful discrimination are as follows. First, Batson says the defendant must show that he is a member of a cognizable racial group; blacks are a cognizable racial group. Batson, 476 U.S. at 96, 106 S.Ct. at 1722. Second, Batson says the defendant must show that the prosecutor has used peremptory challenges to remove members of the defendant's race from the venire; here, for instance, that blacks were stricken. Id. *289 Third, (a) Batson says the defendant "must show that these facts and any other relevant circumstances raise an inference that the prosecutor used [the prosecutor's peremptory challenges] to exclude the veniremen from the petit jury on account of their race," id., and (b) Antwine directs "trial judges to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case." Antwine at 64. Thus, as we read Antwine, in all cases where the defendant supports a motion to quash the venire by showing that the defendant is black and that blacks are stricken by the State from the venire, the trial court must give the State an opportunity to explain its strikes so that the court can consider those explanations in the Fourth step. Crump is not applicable because, in Crump, the Batson proceedings occurred before our Supreme Court in Antwine gave its directions to trial judges.
As to the first three steps, the defendant "must show" certain things. We understand "must show" to mean that the defendant has the burden of proof on these three steps (elements), even though the State's explanations are a part of the third step.
At this point, we reach the Fourth step. Here, the trial court must determine whether the defendant has made a prima facie showing of purposeful discrimination in the selection of the jury. Batson, 476 U.S. at 96, 106 S.Ct. at 1722. If the trial court finds that a prima facie showing has been made, a rebuttable presumption that the State exercised its peremptory challenges in a discriminatory manner results. Antwine at 64.
Thus, the Fifth step allows the State to overcome the presumption by supplying "a neutral explanation for challenging black jurors." Batson, 476 U.S. at 97, 106 S.Ct. at 1723. The risk of failure to explain the strikes falls upon the State.
The Sixth and final step, in cases with a Batson issue tried after Batson, places the duty on the trial court "to determine if the defendant has established purposeful discrimination." Batson, 476 U.S. at 98, 106 S.Ct. at 1724.
Our analysis supports our conclusion that the defendant here has standing to raise the challenge made. At the Fourth step, the trial judge must determine if a prima facie case has been made, based on the evidence presented to the court in the first three steps. The Third step requires the court to consider "other relevant circumstances." The racial composition of the jury panel after the State has made its strikes could be a relevant circumstance for the trial judge to consider.[3] It is not, however, a circumstance which mandates a finding of no prima facie case.
The State also contends that defendant "has failed to establish a prima facie case of purposeful racial discrimination" because the defendant failed to prove "other relevant circumstances." Batson, however, places its confidence in trial judges to decide if the circumstances create a prima facie case. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. Here, the trial judge found "that a prima facie case was established that the State used its peremptory challenges to strike black venirepersons." We defer to the trial judge in making such a finding.
Finally, the State argues that even if the defendant made a prima facie case, "the State sufficiently shifted the burden back to the defendant by offering race neutral explanations." Whether the State sufficiently shifted the burden to the defendant is a question of fact that was resolved by the trial court in favor of the *290 defendant. An appellate court may set aside such a finding only when it is clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Antwine, id. at 66, quoting Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985).
As the State acknowledges in its brief, "this is an overwhelming standard which must rarely if ever be disturbed on appeal." We cannot find that the trial court was clearly erroneous in its finding that defendant made a prima facie case and that the State did not present legitimate reasons for all of its peremptory challenges.
The Batson and Antwine decisions, as well as the findings of the trial court after remand, require this court to reverse the convictions and remand for a new trial. Other points raised by the defendant were adequately discussed in the majority and concurring opinions of August 12, 1986, and are denied.
GARY M. GAERTNER and KAROHL, JJ., concur.
NOTES
[1] Following selection of the jury, defense counsel asked the court to take notice that the State used its peremptory strikes on five named blacks and one filipino. He also asked the court to note that the State used its peremptory strikes for alternates on two blacks. A motion to quash was made "based on improper use of his peremptory strikes to remove persons of minority."

In a colloquy with the attorneys, the court commented that there could be reasons why the State struck the blacks, saying maybe they "were more defendant prone or something just like you felt the blacks you had to take off would go against your wishes." The judge then inquired of the assistant circuit attorney if there was anything he wanted to say about this; the reply was "No, I have nothing."
[2] The assistant circuit attorney used a system of "x's" and "+'s". An "x" was a negative, a "+" was a positive. The marks meant nothing specific, and the assistant circuit attorney said "I cannot be specific" as to what they mean.

The trial judge inquired: "Do you have any of these x's next to white people on this list?" The assistant circuit attorney responded: "This particular sheet, no. Sometimes I do."
[3] The Batson claim is based on the Equal Protection Clause which forbids the State from excluding black persons on the assumption that they will be biased, because the defendant is black. Batson, 476 U.S. at 97, 106 S.Ct. at 1723. It would seem logical, therefore, if the claim is directed towards the State's action, the better time to raise the challenge would be after the State has made, and before the defendant makes, peremptory strikes.

By so doing, if the State has made an improper strike, the trial court could disallow it. The State could then strike another venireperson to complete its peremptory strikes. In this manner, the entire jury panel would not be lost and judicial time would be maximized. Also, defense counsel could still make the defendant's strikes following those of the State, as required by § 546.180.3 RSMo 1986.