**STATE of Missouri, Plaintiff–Respondent,**

v.

**Vanessa SMITH, Defendant–Appellant.**

**Vanessa SMITH, Plaintiff–Appellant,**

v.

**STATE of Missouri, Defendant–Respondent.**

Nos. 54711, 56340.

Missouri Court of Appeals, Eastern District, Division Three.

April 24, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1990.

Application to Transfer Denied July 31, 1990.

Mary C. McWilliams, Beverly A. Beimdiek, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Presiding Judge.

Defendant, Ms. Vanessa Smith, was convicted by a jury of second degree murder, § 565.021 RSMo 1986, armed criminal action, § 571.015 RSMo 1986, and unlawful use of a weapon, § 571.030 RSMo 1985.

Defendant was sentenced to life imprisonment on the murder charge and to two terms of imprisonment of five years each on the remaining charges, one five year term to be served consecutive to the life term and the other five year term to be served concurrently.

In her direct appeal, defendant challenges the prosecutor's use of peremptory strikes and also challenges the admission of evidence of a prior assault by defendant against the same victim. Consolidated with this direct appeal is defendant's appeal from the denial of her Rule 29.15 post-conviction motion. We affirm.

One night in 1987, the victim, Mr. Eddy Jones, was with Ms. Carlene Liggins in the Polynesian Room of the Carousel Motel. As Mr. Jones and Ms. Liggins prepared to leave, Ms. Liggins saw defendant sitting behind them. Mr. Jones had told Ms. Liggins about a prior relationship he had had with defendant, and Ms. Liggins recognized defendant. Defendant approached Mr. Jones and asked him for a ride home. He refused and a quarrel between the two followed. The three went outside the motel, then defendant and Mr. Jones went back inside. Ms. Liggins waited outside.

Inside the lobby of the motel, several witnesses saw or heard defendant and Mr. Jones enter the lobby quarrelling and also saw or heard defendant shoot Mr. Jones twice. Two of the witnesses heard defendant say: "I told you I would kill you". Defendant fled the scene and subsequently was arrested and charged.

I

Defendant first contends the court erred in admitting into evidence testimony that defendant had previously shot at the victim, Mr. Jones. A state's witness testified that, on January 24, 1987, some six months before the shooting incident in issue here, defendant had shot at Mr. Jones.

The fact defendant previously shot at Mr. Jones is relevant to show her culpable mental state in shooting him in the present incident. *State v. Kenley*, 693 S.W.2d 79, 81–82 (Mo.banc 1985), *cert. den.* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986).

Defendant, however, argues the prior shooting incident was too remote in time, and, therefore, the prejudice worked by the admission into evidence of the uncharged crime of shooting outweighed its probative value. We disagree.

■ The trial court has discretion in balancing the possible prejudice against probative value. The shooting at another human being is an incident, fortunately, still considered a deviation from the norm. Sensibly considered, a great deal of time is necessary to wash the causes of a prior shooting from the mind of the perpetrator. Without more, six months is not an unusual length of time for a prior shooting to be relevant to a present intent to shoot. The trial court was well within its discretion in permitting the admission into evidence of the prior shooting to show defendant's culpable mental state. *See State v. Johnson,* 349 Mo. 910, 163 S.W.2d 780, 783 (1942).

## II

■ Defendant also challenges as error the trial court's refusal "to quash the jury". Defendant argues that the prosecutor struck prospective jurors because of their race in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *State v. Antwine,* 743 S.W.2d 51 (Mo.banc 1987), *cert. den.* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

The state counters by arguing that defendant failed to preserve this point for review because she did not object to the juror strikes until after the jury had been sworn. We agree.

In *State v. Price,* 763 S.W.2d 286, 289, fn. 3 (Mo.App.1988), this Court said that since a *Batson* claim is directed against the state striking venirepersons because of race

the better time to raise the [claim] would be after the State has made, and before the defendant makes, peremptory strikes.

By so doing, if the State has made an improper strike, the trial court could disallow it. The State could then strike another venireperson to complete its peremptory strikes. In this manner, the entire jury panel would not be lost and judicial time would be maximized. Also, defense counsel could still make the defendant's strikes following those of the State, as required by § 546.180.3 RSMo 1986.

This makes good sense.

Then, in *State v. Lawrence,* 785 S.W.2d 749, 751–752 (E.D.Mo.App.1990), this Court held the defendant "effectively waived his right to challenge the jury panel" when the defendant failed to challenge the peremptory strikes until after the jury was selected, both counsel had agreed that it was the jury they had selected and the court had discharged the remaining venirepersons. This also makes good sense.

■ There simply is no justification for defense counsel to wait until the remaining venirepersons are discharged to challenge the state's peremptory strikes. If defense counsel does wait until the venire panel is discharged and the challenge is sustained, then the jury selection process must start anew, and an additional venire panel must be called. This simply delays justice, and, in those jurisdictions where an additional venire panel is not readily available, the delay can be substantial.

More important, in the present case, defense counsel, apparently, not only waited until the venire panel was discharged, she waited until after the jury was sworn to make her *Batson* challenge. The defendant was thus in jeopardy. If the defendant's challenges were then sustained, the state's action supporting that ruling, arguably, could be characterized as prosecutorial misconduct. It would be this misconduct which, in turn, would require a mistrial to be granted. A mistrial caused by the state may preclude the defendant from again being put into jeopardy. *See, e.g. State v. Fitzpatrick,* 676 S.W.2d 831, 835 (Mo.banc 1984). This result may not always be certain to occur. The risk is great enough, however, to require defense counsel to challenge the state's peremptory strikes prior to the jury being sworn and prior to the remaining venirepersons being dis-

charged. Therefore, we hold defendant's *Batson* challenges were untimely, and the trial court's denial of those challenges was proper.

### III

Nonetheless, we consider defendant's *Batson* challenges *ex gratia*. *Batson* requires a defendant to show three things to make a prima facie case of racial discrimination in the use of peremptory challenges: (1) the defendant must show he is a member of a cognizable racial group; (2) the defendant must show the prosecutor used peremptory challenges to remove prospective jurors of defendant's race; and (3) the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude members of the venire panel because of their race. 476 U.S. at 96, 106 S.Ct. at 1723. In pointing out these "other relevant circumstances," the defendant may rely on the fact that peremptory challenges allow those "who are of a mind to discriminate" to do so. *Id.* Once the defendant has made a prima facie showing, the burden shifts to the state to come forward with an acceptable neutral explanation for challenging black jurors. 476 U.S. at 97, 106 S.Ct. at 1723.

The trial court made no express findings in support of its denial of defendant's *Batson* motion, but the record here is sufficient[1] for us to determine whether it supports the trial court's implicit finding that the prosecutor's explanations were (1) neutral, (2) related to the present case, (3) clear and reasonably specific, and (4) legitimate. *See, e.g., State v. Butler,* 731 S.W.2d 265, 268 (Mo.App.1987).

■ The first question is whether defendant made a prima facie case sufficient to raise an inference that the prosecutor struck venirepersons because of their race. In deciding whether defendant made a prima facie showing, we look to all relevant

circumstances. *Batson, supra,* 476 U.S. at 96, 106 S.Ct. at 1722. Circumstances that courts have considered relevant include the race of the victim, *State v. Hood,* 745 S.W.2d 785, 787 (Mo.App.1988), the racial composition of the jury panel after the state makes its strikes, *State v. Price, supra,* 763 S.W.2d at 289, whether white jurors similar to removed black jurors were removed, *State v. Brown,* 747 S.W.2d 261, 264 (Mo.App.1988), the race of "key witnesses", *Antwine, supra,* 743 S.W.2d at 65, the prosecutor's statements and questions on voir dire, *State v. Jones,* 747 S.W.2d 229, 231 (Mo.App.1988), and whether the prosecutor's strikes had a disproportionate impact on the black venire members. *State v. Payton,* 747 S.W.2d 290, 292 (Mo.App.1988). In addition, *Antwine* directs courts to consider the prosecutor's explanations of the strikes. 743 S.W.2d at 64.

■ In this case, the prosecutor used four of his six strikes (67%) on blacks. Blacks constituted six of twenty-eight jurors (21%). Therefore, the prosecutor's strikes had a disproportionate impact on blacks. The victim, Mr. Jones, and "primary witnesses" were black.[2] Two blacks remained on the jury after the prosecutor's strikes.

The prosecutor said he anticipated defendant would allege the victim used to hit her, and, therefore, he said, his preference was to remove women and leave only male jurors. Using this statement, the state, on appeal, argues that defendant is in fact challenging the striking of women and women are not a protected class under *Batson*. However, the record can be sensibly read to show that defendant here was objecting to the strikes the prosecutor made, not because women were being stricken, but because blacks were being stricken. Moreover, even though the prosecutor said his reason for striking the venirepersons was because they were women, if the real reason was because of their race, the strikes were impermissible. *State v. Holman,* 759 S.W.2d 902, 903 (Mo.

---

1. *See State v. Hood,* 745 S.W.2d 785, 787 (Mo.App.1988); *State v. Henderson,* 750 S.W.2d 555, 558 (Mo.App.1988); *compare, State v. Herron,* 745 S.W.2d 835, 837 (Mo.App.1988); *State v. Jackson,* 746 S.W.2d 429, 430 (Mo.App.1988).

2. This is according to a statement made by the prosecutor at trial. Neither the court nor defense counsel took issue with either the prosecutor's statement or his characterization.

App.1988). Therefore, the fact that the prosecutor explained his strikes by saying he struck women does not automatically mean the strikes were permissible; it is merely one relevant fact to be considered. The prosecutor also made individual explanations for his striking each of the four black venirewomen. We consider those explanations as well.

The prosecutor said he struck Ms. Lura Wynn because she was about the same age, same sex and same "build type" as defendant, she worked for the Missouri Division of Family Services, and she would identify with defendant. The prosecutor struck Ms. Willetta Chambliss because she was female, a little older and she worked in a supervisory capacity at a federal government office. The prosecutor stated he did not like government workers and was afraid Ms. Chambliss would lead the jury and identify with the defendant.

The prosecutor said he struck Ms. Mary Lee Bonds because she was in the "same age category" as Ms. Chambliss and would also identify with defendant. The prosecutor also said Ms. Bonds lives near the scene of the crime and, despite her disclaimers, was aware of the Motel's reputation. The prosecutor felt the Motel's reputation might reflect badly on his "star witnes[s]", a manager at the Motel.

The prosecutor explained his strike against Ms. Ethel Nunn by saying she was the same age and sex as defendant, she was a government employee, she had a bad, bossy, pushy attitude, she would identify with defendant and she would lead the jury. The prosecutor also noted Ms. Nunn believed her aunt had been treated badly by the police.

In considering the prosecutor's explanations, we first note that one explanation is not supported by the record. The prosecutor said he struck Ms. Chambliss because she worked in a supervisory capacity. Ms. Chambliss stated she worked as an "inventory management specialist." There is nothing in the record to suggest this is a supervisory person.

■ Next, we note the prosecutor said he struck Ms. Chambliss and Ms. Nunn because they worked for the government.

However, the only explanation the prosecutor gave for striking governmental employees was because he had had bad experiences and results with them. This explanation is unacceptable. In *Antwine, supra,* the Court said

> *Batson* is [not] satisfied by "neutral explanations" which are no more than facially legitimate.... Were facially neutral explanations sufficient without more, *Batson* would be meaningless. It would take little effort for prosecutors who are of a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. We do not believe the Supreme Court intended a charade when it announced *Batson.*

*Antwine, supra,* 743 S.W.2d at 65.

*Antwine* directs trial courts to

> consider the relevance of the State's justification for challenging a particular venireman to the kind of crime charged, the nature of the evidence to be adduced by both parties and the potential punishment which a guilty verdict may produce. *Id.*

Therefore, without more, the prosecutor here cannot justify a peremptory strike by invoking the "rote 'neutral explanation' " that a venireperson was a government employee.

■ We also note the prosecutor stated each of the venirewomen in question would identify with defendant. Arguably, this explanation is simply another "rote 'neutral explanation.' " However, it is distinguishable from the government employee explanation. The government employee explanation does not depend on any observation or assessment of the prospective juror. But, whether a venireperson might identify with a defendant does depend on observing the person's demeanor and attitude in responding to the voir dire questions. Thus, even though the explanation is susceptible to abuse, *Batson* and *Antwine* both place faith in the trial judge's ability to detect this abuse when the particular venireperson has shown no sign of such identification or where the case is one in which identification is not a significant problem. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Antwine,* 743 S.W.2d at 65.

In the instant case, identification with defendant is a real possibility. In explaining his strikes, the prosecutor said an anticipated issue in the case would be a self-defense claim by defendant, a woman, claiming to have been beaten up previously. Defendant confirmed this by testifying she and the victim had had a relationship with each other for 13 years. The victim had hit her several times. In this factual context, the prosecutor's fear of a venirewoman identifying with defendant cannot be said to be unfounded. Whether his fears were justified in relation to individual venirewomen is an issue which turns on an assessment of the manner and demeanor of the prospective venirewomen. We must defer to the trial court's resolution of this issue.

The prosecutor also explained two of his four strikes against blacks by saying these venirewomen were the same age as defendant. Two white venirewomen who were close to defendant's age were also struck. A white venirewoman within eight years of defendant but not struck was Ms. Sandra Schott. The prosecutor did not explain the disparate treatment of Ms. Schott.

The prosecutor explained his other two strikes against blacks by saying they were "older." Ms. Bonds was born in November, 1935, and Ms. Chambliss was born in October, 1924. A white venirewoman, Ms. Felicia O'Neal, who was born in August, 1926, was not stricken. The prosecutor did not explain this disparate treatment. In addition, the prosecutor did not explain why older venirewomen were bad for the state.

Finally, the prosecutor explained the strike of Ms. Nunn by noting she felt an aunt was treated unfairly. The record shows that Ms. Suzanne Faletti, not struck by the state, had an aunt treated badly by the court system. Ms. Faletti said the experience left her feeling skeptical about the prosecutors, courts and judges. The prosecutor did not explain this disparate treatment.

In short, the record shows there were some venirewomen with similar characteristics who were struck and some who were not.

Facts which support an inference that the prosecutor struck the venirewomen because of their race are: the prosecutor's strikes had a disproportionate impact on blacks; one of the prosecutor's explanations for his strikes is not supported by the record; the prosecutor failed to explain the disparate treatment of white venirewomen similar to black venirewomen who were struck; and the prosecutor relied in part on an explanation that is little more than a "rote 'neutral explanation.'"

Facts which refute an inference of strikes based upon race are: the victim and the primary witnesses were black; the prosecutor did not strike as many blacks as he could have; the prosecutor did strike some white venirewomen who were similar to black venirewomen who were stricken; and the facts of the case support the possibility relied on by the prosecutor that some of the venirewomen in question might identify with defendant.

Because the trial court made no explicit findings, we assume the court implicitly found facts supporting its denial of defendant's *Batson* challenges. Therefore, the question is whether, on this evidence, the trial court's implicit finding that defendant failed to make a prima facie case is clearly erroneous. *State v. Henderson,* 750 S.W.2d 555, 558 (Mo.App.1988). The finding is clearly erroneous, if on review of all the evidence, we are left with the definite and firm conviction that a mistake has been committed. *Antwine, supra,* 743 S.W.2d at 66. We cannot so find.

Moreover, if a prima facie case were made, the record would support a finding by the trial court that the prosecutor's explanations rebutted that prima facie case. Arguably, these explanations might not support a motion to challenge for cause. However, a prosecutor's explanations need not rise to the level of a challenge for cause. *Batson, supra,* 476 U.S. at 97, 106 S.Ct. at 1723; *Antwine, supra,* 743 S.W.2d at 65.

## IV

Defendant next challenges the motion court's denial of her Rule 29.15 motion.

Defendant argues that her counsel was ineffective for failing to call Ms. Laura Swanson, who, defendant argues, could and would have testified that she saw the victim hit defendant on several occasions.

■■■ We must defer to the trial court's determination of the credibility of witnesses. *Jones v. State*, 773 S.W.2d 156, 158 (Mo.App.1989). Our review is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *Jones* at 157.

■■ Defendant's trial counsel testified at the motion hearing. She testified that her first knowledge of Ms. Swanson was when Ms. Swanson wrote her a letter just before sentencing. This testimony amply supports the motion court's finding that defendant failed to establish that she gave Ms. Swanson's name to counsel before trial. We cannot find counsel ineffective for failing to call witness of whom she had no knowledge. *Henderson v. State*, 770 S.W.2d 422, 423 (Mo.App.1989).

Judgments affirmed.

SMITH, J., concurs.

GRIMM, J., concurs in part, concurs in result and dissents in part.

GRIMM, Judge.

## CONCURS

I concur in parts I, II, and IV of the majority opinion. I also concur in the result.

## DISSENTS

I respectfully dissent from that portion in part III which says that the prosecutor's explanation "for striking governmental employees [that] he had had bad experiences and results with ... is unacceptable." *State v. Smith*, Nos. 54711 and 56340, maj. op. at 749. Further, "the prosecutor here cannot justify a peremptory strike by invoking the 'rote "neutral explanation"' that a venireperson was a government employee." Slip op. at 749.

A trial judge could refuse to accept such an explanation if the judge believed it was a rote neutral explanation that bore facial legitimacy but concealed a discriminatory motive. *State v. Antwine*, 743 S.W.2d 51, 65 (Mo.banc 1987). In making that decision, the judge could consider personal experiences with the prosecutor, as well as many other factors. *Id.*

On the other hand, a trial judge should be permitted to accept such an explanation. For *Antwine* says that "*Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate 'hunches' and past experience, so long as racial discrimination is not the motive." *Id.*