**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Elton JACKSON, Defendant-Appellant.**

No. 53240.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 8, 1988.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant, Elton Jackson, appeals from his conviction by jury of burglary in the second degree, Section 569.170 RSMo 1986. He was sentenced by the court as a persistent offender to six years imprisonment.

Defendant raises one point on appeal. He contends that the trial court committed error when it denied defendant's Motion to Quash the Jury Panel. Defendant maintains the state used six of its peremptory strikes to remove black venirepersons from the regular jury panel and failed to enunciate racially neutral reasons for its actions as required by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We remand with directions.

The sufficiency of the evidence is not challenged. Therefore, only a brief recitation of the facts is necessary. On August 17, 1986, at approximately 11:35 p.m., Alicia Jones heard the gate to her backyard open and saw a person walking in the yard. The person attempted to look into Ms. Jones' bedroom window. Ms. Jones went to an upstairs apartment and asked a neighbor to call the police. She then went out on the balcony and saw a man standing in front of the sliding glass door which led into her apartment. She heard a rattling noise which sounded "[l]ike he was trying to get the door off the track."

A police car entered the back alley. Ms. Jones saw the man step into her apartment and then leave. He fled down a staircase but was apprehended by police. Ms. Jones' sliding glass door was pushed off its track and was open about a foot. The man apprehended was defendant.

A review of the record indicates that defendant is black. At the close of the voir dire examination the state used six of its seven peremptory strikes against black venirepersons. This removed six of the twelve black venirepersons on the original panel, leaving three on the jury. The defense, noting specifically on the record

which venirepersons were stricken, moved to quash the jury pursuant to *Batson*. The prosecutor then stated his reasons for striking the six black venirepersons, to wit: Juror 707 was stricken because she did not know the difference between a victim and a defendant, her ability to respond seemed limited, and she appeared bored and non-responsive; Juror 641 was stricken because she was indecisive, inattentive, appeared to have below average intelligence, and because she was a government employee working for the City of St. Louis; Juror 656 was stricken because he had a close friend in the penitentiary and because he worked for the government as a mail handler for the United States Postal Service; Juror 811 was stricken because she was a government employee working for the United States Army; Juror 741 was stricken because she was totally unresponsive, appeared inattentive, bored and defensive, and because she was currently unemployed; and, Juror 615 was stricken because she had numerous relatives who had been charged with various crimes, and because she had been burglarized many times. Defense counsel countered these explanations by noting that other jurors fit this rationale: Juror 659 appeared inattentive and dosed off; and, Juror 759 had an uncle who had served time in the penitentiary for vehicular manslaughter. These venirepersons were white. Thereafter, the court overruled defendant's Motion to Quash. No express findings were made.

Defendant now argues that the state's action created a prima facie showing of racial discrimination which the prosecutor did not rebut with race neutral, case specific and legitimate explanations.

We note that this case was tried, a verdict was reached and an appeal was taken prior to the Missouri Supreme Court decision of *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987). *Antwine* provides guidance to trial courts in dealing with *Batson* issues and defines the appropriate standard of appellate review to *Batson* questions. *State v. Herron*, 745 S.W.2d 835, 836 (Mo. App.E.D., 1988). More specifically, and with reference to the duties of the trial court when confronted with a *Batson* issue, the trial court is expected to:

consider the state's explanation of the manner in which it employed its challenges prior to making a final determination as to whether a prima facie case [of racially discriminatory strikes] exists. We must therefore direct our trial judges to consider the prosecutor's explanations as part of the process of determining whether a defendant has established a prima facie case of racially discriminatory use of peremptory challenges.

*Antwine*, at 64. This determination entails making findings of fact or detailed explanations on the record of the court's basis for determining whether the prosecutor has engaged in purposeful discrimination in the selection of the jury panel. *Herron*, 745 S.W.2d at 837. This is a prerequisite to appellate review.

Accordingly, we remand this cause to the trial court for an evidentiary hearing to determine whether the prosecutor used his peremptory challenges in a racially discriminatory manner. The trial court shall certify to this court a record of the hearing and its findings of fact and conclusions of law in order that we may take appropriate action consistent with *Batson* and *Antwine*.

This case is remanded for purposes of a hearing consistent with this opinion.

SMITH and KELLY, JJ., concur.