**STATE of Missouri, Respondent,**

v.

**Lemansky A. THOMAS, Movant.**

**Nos. 54493, 55875.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 14, 1989.

Craig A. Johnston, Columbia, for movant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

We affirm the conviction and life sentence imposed after the jury convicted defendant of murder in the second degree and after the court adjudged defendant to be a prior and persistent offender. The grand jury indicted defendant, and others, on the charge of murder in the first degree in violation of § 565.020.1 RSMo 1986. The indictment alleged defendant and four others, deliberately and knowingly, caused the

death of Daryl Toran "by striking, stabbing, kicking and beating him with boards, a rifle, sticks, and fists." The state waived the death penalty. The jury convicted defendant of the lesser included offense of murder in the second degree.

This appeal involves claims of error during the trial and a consolidated claim of error on defendant's motion for post-conviction relief under Rule 29.15. We summarily dispose of and reject the post-conviction matter which addresses the adequacy of amended pleadings filed by motion counsel, a matter not cognizable under the rule. *Allbritton v. State,* 747 S.W.2d 687, 689 (Mo.App.1988). [Allbritton addressed inadequacy of counsel in a proceeding under former Rule 27.26]. The issues on direct appeal involve: (1) two challenges relying on *Batson v. Kentucky;* (2) error in overruling defendant's motion to suppress defendant's videotaped statement admitting involvement; (3) error in overruling defendant's objections to parts of the state's rebuttal argument where the state argued defendant fabricated testimony and told the jury they would have to explain an acquittal to their family and others after trial; and, (4) error in sustaining state's objection during defendant's closing argument where defendant's trial counsel attempted to argue "a lot of people had been implicated that were never charged."

There was an abundance of testimony, including defendant's video statement, which supported the jury verdict. For purposes of deciding the issues presented by this appeal the following evidentiary facts are sufficient to permit an understanding of the decision of this court. In the early morning hours of August 2, 1986, defendant and seven others arrived at the home of Otis Washington. They dragged Daryl Toran from that house. They suspected that Toran was responsible for the shooting death of Antwonine Pickens, the brother of one of them. Some of the mob bludgeoned Toran to death. Toran was stabbed nine times, sustained multiple abrasions, contusions and bruises. Toran died of multiple blunt trauma and stab wounds to the head and chest. Thereafter, the mob went to the home of Pickens where defendant

made a statement acknowledging his participation.

The *Batson* challenges implicate the following factual background. The parties began with a venire of forty. Six were eliminated for cause and of the remaining thirty-four venirepersons, four were black. From the first thirty each party exercised nine peremptory strikes resulting in a jury of twelve. The four remaining venirepersons, all white, were used to seat two alternates after each party struck one. The state peremptorily excluded three black venirepersons. As a result, eleven white jurors and one black were selected to try defendant, a black man.

Defendant's trial counsel moved to quash the jury panel pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court asked for and received explanations from the prosecutor regarding removal of Robinson, Simpson, and Woods by peremptory challenges exercised by the state.

In summary, the prosecutor gave the following explanations. The prosecutor observed that venireman Robinson sat through the proceeding with sunglasses on, was very inattentive, his expressions and responses indicated either total disinterest or disgust, and he was unemployed. The prosecutor concluded he was "a bit weird." Regarding venireperson Ms. Simpson, the prosecutor detected she would have a problem with police officers' credibility, at least on the issue of admissibility of defendant's video statement. She explained she had bad experiences with police officers concerning her brother and her son and as a prior juror; and, although she expressed an ability to be fair, the prosecutor did not find those statements credible. Ms. Woods, the third challenged venireperson, was approximately the same age as defendant's mother and was an endorsed witness for defendant. She lived in a rough neighborhood near where the murder occurred. The prosecutor believed Woods might, unfavorably to the state, associate personal experiences with defendant's mother and the case.

The court overruled defendant's motion to quash the panel. It recognized the tendency of trial lawyers to rely on "instinct and gut reactions" in selecting a jury panel. It then made the following findings: "I can't say that the reasons that [the prosecutor] has articulated are not substantial reasons. I cannot say that this is a case where he has stricken these prospective jurors solely out of race motivation."

■ Defendant's first claim of error is the prosecutor's explanations failed to rebut a presumption of discrimination and the reasons given were merely pretextual and not legitimate because they were not supported by the record. There is no dispute defendant is black and the state struck three black venirepersons. We find the explanations are supported by the record. We reject the contention that merely because some of the observations regarding each stricken venireperson may have been equally valid as to other members of the venire who were not challenged, that this alone requires a finding the reasons were pretextual. The finding of the trial court is not, for that reason alone, unsupported by the record or clearly erroneous. The explanations are clear, reasonably specific and neutral. They satisfy the standard established in *State v. Antwine*, 743 S.W.2d 51, 63–67 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1987). Nothing in the record suggests the observations and conclusions drawn by the prosecutor regarding each black venireperson stricken by the state, are not supported by the record and therefore, merely pretextual. Further, on the present record, defense counsel was apparently satisfied with the explanations because no effort was made by the defense to demonstrate that the state's explanations were merely pretextual, not the true reason for the use of the state's peremptory challenges. In *State v. Antwine*, the Supreme Court assigned to defense counsel an obligation to demonstrate that explanations were pretextual. *Id.* at 64.

■ Defendant also complains that the court erred in failing to make findings or failing to make sufficient findings of no

*Batson v. Kentucky* violation. We held in *State v. Herron*, 745 S.W.2d 835, 837 (Mo. App.1988) that trial courts are expected to make findings of fact or detailed explanations on the record of the basis for their determination as to whether the prosecutor engaged in purposeful discrimination in the selection of a jury panel as a prerequisite to any meaningful appellate review. In *Herron*, the trial court gave no explanation of its ruling denying a motion to quash the jury panel. Following *Herron*, we held that findings of fact or detailed explanations on the record are a "prerequisite to appellate review." *State v. Jackson*, 746 S.W.2d 429, 430 (Mo.App.1988). However, in *Jackson*, as in *Herron*, the trial court made no express findings. *State v. Jackson*, 746 S.W.2d at 430. In the present case the court stated on the record the explanations were not insubstantial and the strikes were not made solely out of race motivation. These are findings on the fact issue presented by the motion to quash the jury panel. We reject defendant's claims of *Batson* error.

Defendant asserts the trial court erred in denying a motion to suppress his videotaped statement given to the police and in overruling his objection to its presentation before the jury. This claim is based upon rights guaranteed by the fourth and fourteenth amendments to the United States Constitution and Article I, Section 15 of the Missouri Constitution, to be free from unreasonable searches and seizures. Defendant claims the factual setting for this contention is that during the investigation the police arrested defendant in his home without a warrant, where there was adequate opportunity to procure a warrant, hence, defendant's statement obtained while unlawfully held must be suppressed as the fruit of a poisonous tree.

Defendant relies on *United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980) and *State v. Mayes*, 654 S.W.2d 926 (Mo.App.1983), and similar cases. We note from the motion to suppress that defendant relied on three grounds: (1) the statement was not voluntary; (2) the statement was made without

the benefit of *Miranda;* and, (3) the direct result of an unlawful arrest. Only the latter ground is before this court.

■ The general rule recognized in these cases is a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest will violate the suspect's fourth amendment rights. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, no warrant is required if the entry is by consent or permission of someone with authority to consent. *State v. Griffin,* 756 S.W.2d 475, 484 (Mo. banc 1988). There were facts before the trial court to support the finding that the entry was permissive. Defendant resided with his mother. Two police officers testified they identified themselves as such and were admitted to the home by defendant's mother. The officers testified they were admitted by consent, spoke with defendant and he consented to go with them to the homicide unit. They claimed no arrest was necessary because defendant consented. Credibility of this testimony was for the trial court. *State v. Battle,* 661 S.W.2d 487, 491 (Mo. banc 1983), *cert. denied,* 466 U.S. 993, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984). On the matter of consent for entry, defendant's mother admitted she permitted police to enter her home. There was evidence from which the court could find both a consensual entry and defendant's agreement to accompany the police to the police station. The trial court was not bound by defendant's opposing evidence.

■ There is a further reason why no error occurred in admitting the defendant's video statement. The court heard undisputed evidence that at the police station, defendant originally denied any involvement and asserted he was not in St. Louis at the time of the killing. A co-defendant, Anthony Pickens, was permitted to talk to defendant at the police station. Pickens informed defendant that he, Pickens, had given a complete statement to the police. Thereafter, defendant agreed to and made the video statement which became evidence at the trial. Under these circumstances there was no causal connection between the claimed unlawful arrest and defendant's voluntary statement. *State v. Kilgore,* 771 S.W.2d 57, 61 (Mo. banc 1989).

■ Defendant claims the trial court abused its discretion to the prejudice of defendant when it sustained an objection to defendant's proposed closing argument "that a lot of people who testified against appellant had been implicated in the alleged offense, but were not charged." As a result, defendant argues he was precluded from arguing that some of the state's witnesses implicated defendant because they did not want to become suspects. This was a "lack of credibility" argument.

For a number of reasons we reject this claim of error. First, defense counsel developed a similar argument before the jury. Defense counsel suggested Otis Perkins was not charged because he made statements to the police, and also argued state's witness Lorenzo Jackson was "[a] man [who] implicates all these people plus my client, and he's not charged."

The objection sustained by the trial court related only to comments about a "lot of people." In developing the argument about Paul Veasley, defense counsel asked the jury what interest or bias Veasley had. "The same interest and bias Otis Perkins and Lorenzo Jackson have." The objection came, immediately thereafter when defense counsel made the statement "[a] lot of people, ladies and gentlemen, have been implicated in this case that have never been charged." The ruling did not have the effect of denying defendant the opportunity to make a credibility argument about named witnesses. In addition to these arguments, which were made without objection, the court submitted an instruction regarding credibility to the jury.

Second, we find that even as to Paul Veasley, the theory of self-interest, bias and prejudice was argued. Only the general statement regarding "a lot of people not being charged," was sustained and stricken. Earlier arguments regarding Jackson and Perkins suggested their vested interests in cooperating with the police in order "that [this conduct] will get them off the hook and they'll become a witness and they

won't become a suspect." The prosecutor did not object to these statements. Accordingly, by striking a reference to "a lot of people" the court did not abuse its discretion in controlling closing argument.

Third, because defendant was permitted to present his theory of bias and prejudice of named eyewitnesses for the state, the ruling now under review was not prejudicial. There is no prejudice in a ruling regarding cross-examination where the gist of the *testimony* was submitted in other evidence. Here, the gist of the argument was made. See, *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. banc 1984).

Fourth, the physical evidence and the defendant's statement were sufficient to support the conviction without the testimony of any of the state's eyewitnesses. Credibility of the state's witnesses, whose testimony did not substantially conflict with the defendant's own statement, was not decisive. Accordingly, even if it was error to sustain the objection and strike the statement, the ruling was not prejudicial.

■ Defendant also claims a right to a new trial because the court overruled defendant's objection to rebuttal closing argument of the state regarding defendant's contention that his statement was involuntary and made after the police physically coerced defendant. Defendant's counsel argued in closing argument that Instruction No. 8 presented an issue to the jury as to whether defendant's statement was freely and voluntarily made. Counsel for the defendant recalled defendant's testimony that the statement was made after he was threatened, choked, and his hand was hit with a night stick. This testimony required the jury to deal with the fact issue of coercion. Defense counsel argued "I'm going to ask you to deal with it and you're going to have to resolve it. I'm going to ask you to talk about it, and you resolve in your mind to your best judgment if that's a possibility in this case. We do have physical evidence to back it up, to back up at least that his hand was injured when he went into police custody."

In rebuttal, the prosecutor argued defendant was not forced and was not beaten.

Thereafter, the following argument, objection and ruling were made:

[Prosecutor]: You know, within four days after he's over there [in jail] with his buddies and the other jailhouse lawyers over there, 'You know what? You confessed. Well, they beat you, didn't they?' I mean—

[Defense Counsel]: I'm going to object, your Honor.

There's absolutely no evidence of anybody advising him. That's not logical anyway, Your Honor.

[Prosecutor]: She brought the argument that it was planned.

[The Court]: Once again, Counselors, wide latitude is accorded closing arguments.

That has always been the rule.

The attorneys may argue whatever inference they feel is drawn from the evidence, even though it is untrue and even though it is a lie.

Overruled.

The only objection was the argument was based upon facts not in evidence. In a technical sense, there was no evidence a hypothetical conversation occurred between other prisoners and defendant. However, the ruling was not erroneous for that reason. A prosecutor may argue inferences reasonably drawn from the evidence. *State v. Clemmons*, 753 S.W.2d 901, 909 (Mo. banc 1988). Here, defendant made a video statement which the jury saw. Nothing on the statement indicated any prior coercion, threat or injury. The jury also learned that defendant's statement was made only after he was allowed to consult with a friend and co-defendant who had previously given a statement. Finally, there was evidence defendant first complained of injury four days after incarceration. The argument to which defendant objected was hypothetical and was properly a reasonable inference from the evidence.

A second part of the state's rebuttal closing argument was permitted over objection. Defendant argues to this court that the prosecutor was permitted to improperly

personalize to the jury on the issue of whether police officers coerced and beat defendant into making a statement. The relevant parts of the argument are as follows:

It's easy to get off on maybe, maybe, just maybe there's that possibility that this guy was beaten, maybe he is such a weak-kneed individual and his pain threshold is so low that this guy who has been shot a number of times before, has been baseball-batted a number of times before, ... that his pain threshold is so low—sure it defies common sense, but you say, maybe, well, maybe—we didn't see any real evidence of it, but maybe it's a possibility.

That's not good enough.

When you leave after your deliberations, you go back home and you talk to your wife, brother, sister, kids, they'll ask you and you can tell them what kind of case it was. It was a murder case, pretty interesting. There was one mob of one group, they all got together and there was some shooting going back and forth, and then, you know, there was a killing in retaliation of this guy and they didn't deliberate about it very much. I mean, you can tell the guy didn't think about it very much, just went up and got him, there wasn't a lot of deliberation.

What else was there? Well, there were four people that came in and said he was there. The police officers said he was there. And you know what, he even—on videotape, he even confessed.

You know he say [sic] he was beaten. Well, you look at the videotape. "Was he beaten," your brother or sister will say. "I don't know. Sure didn't look like it."

"Was his hand hurt?" "Well, no, he was waving it around, doing this and that. Didn't look hurt. At least not hurt enough to make a confession."

Then there was scientific evidence that the things that he said were used were, in fact, used in this killing.

Then the question, they'll say, "Well, what did you do?" "We acquitted him."

They'll look back and they'll say, "Wait a minute. Why did you—."

[Defense Counsel] I'm going to object, Your honor.

That is going *beyond the verdict* and referring to something that is totally *irrelevant* to the factual matters in this case. (Our emphasis).

I ask the jury be instructed to disregard this.

[Prosecutor] I'm seeking to get them to concentrate on common sense.

The Court: All right. Overruled.

The trial court objection was relevance and related to matters outside the duty of the jury. The motion for new trial claimed error regarding this argument because it was a statement by the prosecutor that the jury would have to justify an acquittal to their family and other people after the trial, and this served to deny defendant a fair trial and due process. The claim of error before this court is the statements deprive defendant of due process and a fair trial.

■ The state suggests counsel failed to timely object to the argument and the objection was not specific or based on the same theory asserted on appeal. As a result, the state contends this issue should be addressed only as a matter of plain error. *State v. Hammonds*, 651 S.W.2d 537, 539 (Mo.App.1983). Clearly, the objection during trial is not precisely the same as the issue presented in both the motion for new trial and in defendant's brief on appeal. It is equally obvious the argument, to the extent it hypothesized a possible discussion of a juror with friends or family after trial, was irrelevant to the jury function of deciding the disputed fact issues. It is abundantly clear to this court that the scope and form of the argument did much more than appeal to the jury to reject defendant's claim of coerced confession by concentrating on common sense. In that respect the form of argument was improper and must be condemned. However, it is equally clear that the lengthy argument was made without timely objection on matters of personalization. Further, the exact meaning of "beyond the verdict" is uncertain. We

elect to look to the merits of the claim of error.

The overall subject matter of the argument was the requirement for the jury to decide whether police officers coerced defendant's confession and that his claim of injury to the hand was proof of coercion. This subject matter was first raised by defendant's counsel in closing argument. Hence, the subject matter was proper argument in rebuttal as a response to defendant's argument. Accordingly, the stated objection during trial of relevance and "beyond the verdict" was not well taken and the ruling, when made, was not an abuse of discretion in controlling closing argument.

Defendant concedes the trial court has wide discretion in controlling closing arguments and "argument must clearly be unwarranted and injurious." *State v. Hawkins,* 690 S.W.2d 198, 202 (Mo.App.1985). To the extent the argument was rebuttal on defendant's claim of coercion, it was warranted. That part of the argument which fictionalized a hypothetical accounting for a verdict of acquittal was unwise and unwarranted. Such an argument should not be made because it offers an unnecessary, substantial claim of error to the defendant.

In the present case the fictionalized or hypothetical future event was an argument device chosen to offer the jury a test by which to decide the disputed issue of coercion and injury. That issue was fairly before the jury by evidence offered by both sides and by defendant's prior argument. The argument focused not on juror embarrassment that may result from an acquittal, but on the fact dispute regarding coercion and injury. It is significant to note that in this case substantial evidence of guilt existed, independent of the "confession." This is relevant to a determination of whether the ruling was prejudicial, if erroneous. We conclude the argument was not unwarranted; the subject matter was invited, and not clearly injurious. On the facts we do not find that the argument had the effect of inflaming the jury as prohibit-

ed in *State v. Tiedt,* 357 Mo. 115, 206 S.W.2d 524, 526–27 (Mo. banc 1947).

We affirm.

PUDLOWSKI, P.J., and CRANDALL, J., concur.