STATE of Missouri,
Plaintiff–Respondent,

v.

Kirby HALL, Defendant–Appellant.

Kirby HALL, Plaintiff–Appellant,

v.

STATE of Missouri,
Defendant–Respondent.

Nos. 54348, 55547.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 23, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 1990.

Application to Transfer Denied
April 17, 1990.

Dorothy M. Hirzy, Sp. Public Defender, John F. Newsham, St. Louis, Lew A. Kollias, Craig A. Johnston, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., Ronald L. Jurgeson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

Defendant was convicted by a jury of burglary in the second degree, § 569.170 RSMo 1986. He was sentenced as a prior and persistent offender to a term of seven years imprisonment. He appeals. We affirm.

Defendant also appeals from the denial of his Rule 29.15 post-conviction motion but has not briefed or raised any claim of error as to that order; and, therefore, he has abandoned that appeal.

Defendant was charged with burglary in the second degree by "knowingly [entering] unlawfully ... a building, ... for the purpose of committing stealing therein." § 569.170 RSMo 1986. Defendant contends there was insufficient evidence to show his intent to steal when he entered the building. To resolve this issue, we review the evidence most favorably to the state, accepting as true all facts and reasonable inferences tending to support the conviction and disregarding evidence and inferences to the contrary. *State v. Brown*, 660 S.W.2d 694, 699 (Mo. banc 1983).

On March 10, 1987, at 11:06 p.m., Officers Craig Feldmeier and James Molden of the St. Louis Metropolitan Police Department received a call that an alarm was activated at the Montgomery Brothers Auto Repair at 2901 Parnell in St. Louis. As the car crested a hill on Parnell, Officer Feldmeier could see the repair shop some 400 feet away. The area was well lighted. As the officers drove toward the repair shop, they saw someone leave the building through a hole in one of the garage doors. Officer Molden drove the car to the repair shop and pulled on to the driveway with the headlights of the car shining on the garage doors. Officer Feldmeier got out of the car, approached defendant, whom he had seen leaving the repair shop, and arrested him. At no time did Officer Feldmeier lose sight of defendant. Officer Feldmeier then helped Officer Molden handcuff a second person who emerged from the building.

At trial, the state produced several pictures of the garage doors as they appeared that night. The pictures also showed the positions of several pieces of a panel from one of the garage doors, which had been scattered about the immediate area around the door. The state also produced the panel pieces, on one of which was a foot print.

The repair shop was being used as a warehouse for storing supplies. In addition, some repair work was done there, and, thus, the building contained mechanic's tools. Nothing was taken from the shop. The owner of the store testified that he never gave defendant permission to enter the garage on the night in question.

Defendant acknowledges that intent, more often than not, is proved by inferences drawn from circumstantial evidence. *State v. Joos*, 735 S.W.2d 776, 780 (Mo.App. 1987). Here, however, defendant contends the state failed to show any material was taken from the building and also failed to show he ran or resisted arrest. Therefore, defendant reasons, there were insufficient operative facts to support an inference of his intent to steal. We disagree.

■ At times, to support a burglary charge, the state will show a defendant tried to take or actually took material from the building in question in order to show an intent to steal. *See*, e.g. *State v. McNair*, 719 S.W.2d 113, 114 (Mo.App.1986). Our courts, however, have also made the common sense inference that an unexplained intrusion into the building of another, without more, will support a jury's finding of an intent to steal material located in the building. *See*, e.g. *State v. Harris*, 744 S.W.2d 505, 508 (Mo.App.1988); *State v. Moore*, 729 S.W.2d 239, 240 (Mo.App.1987). That inference is sufficient here.

Defendant also contends the trial court committed plain error in allowing Officer Molden to testify that, upon being arrested, defendant "remained silent" after being read his *Miranda* rights. During re-direct examination of Officer Molden, the following exchange took place between him and the prosecutor:

Q. After [defendant] was arrested, was he advised of his rights?

A. I would assume so. It's normal procedure.

Q. And was he given the opportunity to make a statement?

A. Yes, sir.

Q. Did he make any such statement?

A. Not to my knowledge he never made a statement to me.

Q. He never said, hey, you got the wrong guys?

A. No, sir.

Q. Hey, I was just walking down the street?

A. No.

[Defense counsel]: Objection.

Q. Hey, I was coming out of a bar?

[Defense Counsel]: Asked and answered, he's testifying here.

[Prosecutor]: Just asking questions, Judge.

The Court: Okay. Next question.

Q. Did he ever tell you he had just come out of the lounge and just walking down the street and you picked up the wrong guy?

A. No, sir.

Q. But he was given that opportunity to?

A. Yes, sir.

[Defense Counsel]: Objection.

The Court: Be overruled. You opened it up.

Defendant notes that his trial counsel made no specific objection to the prosecutor eliciting testimony from Officer Molden about defendant's failure to make a statement, and defendant also notes this issue was not raised in defendant's motion for a new trial. Therefore, defendant now requests us to review the admission into evidence of this testimony as plain error. Defendant's request is misdirected and, thus, misses the mark.

█ Plain error here presupposes that defendant's trial attorney had the right to object to the inquiry made of Officer Molden and the failure to exercise this right caused the trial court to commit plain error in allowing Officer Molden's testimony to stand. But, according to the record before us, defendant's trial counsel not only had good reason to refrain from objecting, he had an ethical duty not to do so.

The record shows defendant testified in his own behalf. He testified he did not remain silent; rather, he said he told one of the officers "what had happened." It is apparent from the motion transcript that, at the time Officer Molden was being questioned on re-direct, defendant's trial counsel knew defendant claimed to have made a statement at the time of arrest. Thus, for defendant, at the time Officer Molden was being questioned, the issue of whether defendant made a statement was, at worst, an issue of credibility between Officer Molden and defendant if defendant were to testify, or, at best, a non-issue resolved by the possible inability of Officer Molden to hear any colloquy between defendant and Officer Feldmeier when defendant was apprehended and arrested by the latter officer.

The record and Officer Molden's testimony square with the latter scenario. The record is clear that Officer Molden neither apprehended nor arrested defendant, Officer Feldmeier did. More important, the record does not show Officer Molden was near enough to hear whether defendant was given his *Miranda* rights and whether he remained silent or made a statement when Officer Feldmeier made the arrest. Thus, in this light, Officer Molden's equivocal answers are understandable. He only "assumed" defendant was "advised of his rights", because "it's normal procedure." And, when asked whether defendant ever made a statement, he answered: "Not to my knowledge *he never made a statement to me.*" (emphasis added).

Under either scenario, however, defendant's trial counsel could not object properly or sensibly to Officer Molden's testimony as prejudicial comment on defendant's *post-Miranda* silence. This presupposes defendant was silent, when he was not. Since defendant's trial counsel committed no error, there is no basis for plain error.

Defendant's testimony that he did make a statement to the police also vitiates his now claimed reliance on *Miranda* warnings. *Miranda* warnings contain an implicit assurance that, if the right to remain silent is exercised, the silence will carry no

penalty. *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976). Therefore, a prosecutor's comment on a defendant's post-Miranda silence violates this implicit assurance. *Id. Miranda* warnings, however, contain no assurance that a defendant may lie on the witness stand about whether he made a statement at the time of his arrest. If defendant here was not lying, then, he gave a statement and, thus, did not rely on any *Miranda* assurance. In short, there simply was no assurance given defendant here upon which he can now base his claim of prejudice. *See, State v. Antwine,* 743 S.W.2d 51, 70 (Mo. banc 1987). If there were any error in admitting Officer Molden's testimony about defendant's post arrest conduct, the error would have been cured by defendant's subsequent testimony at trial. *State v. Marvel,* 756 S.W.2d 207, 213 (Mo. App.1988).

Defendant also challenges the prosecution's use of its peremptory challenges under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The venire panel of twenty four people in this case had eight black members. The prosecutor used five of his six peremptory strikes to remove five of these individuals. After the jury of twelve members was selected, three of these twelve were black. Defendant is also black. Defendant contends the state improperly used two of its peremptory strikes to strike two black members from the venire panel: Lawnada A. Norton; and Oscar J. Sewell.

■ *Batson* requires a defendant to show three things to make a prima facie case of racial discrimination in the use of peremptory challenges: (1) defendant must show he is a member of a cognizable racial group; (2) defendant must show the prosecutor used peremptory challenges to remove prospective jurors of defendant's race; and (3) defendant must point out other relevant circumstances which raise an inference that the prosecutor used the peremptory challenges to exclude members of the venire panel because of their race. 476 U.S. at 96, 106 S.Ct. at 1722. In pointing out these "other relevant circumstances," defendant may rely on the fact that peremptory challenges allow those "who are of a mind to discriminate" to do so. *Id.*

Once the defendant has made a prima facie showing, the burden shifts to the state to come forward with an acceptable neutral explanation for challenging black jurors. 476 U.S. at 97, 106 S.Ct. at 1723. The present case was completed prior to our Supreme Court's opinion in *State v. Antwine,* 743 S.W.2d 51 (Mo. banc 1987). Therefore, the trial court here was not required to give the prosecution the opportunity to explain its strikes before determining whether defendant made a prima facie showing of purposeful discrimination. *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988). Nevertheless, the trial court asked the prosecutor to explain the strikes in question, the prosecutor did so, and the trial court denied defendant's motion.[1]

The court made no express findings in support of its denial, but the record here is sufficient[2] for us to determine whether it supports the trial court's implicit finding that the prosecutor's explanations were (1) neutral, (2) related to the present case, (3) clear and reasonably specific, and (4) legitimate. *See, e.g., State v. Butler,* 731 S.W.2d 265, 268 (Mo.App.1987).

■ Explaining his strikes, the prosecutor said he struck venireman Sewell because "he was ... asleep, he was inattentive, hesitant about answering questions and I felt he appeared hostile when I did speak to him...." Handwritten comments on a jury list, made part of defendant's record on appeal, note these observations. The parties tacitly agree these are the trial court's notes. Although there is no express indication that the trial court agreed with the prosecutor, the notes do show the court was complying with *Antwine's* requirement to "not[e] the subtle nuance of both verbal and nonverbal communication from each member of the venire" and to

1. The record does not disclose that an express, formal motion, under *Batson,* was made.

2. *See State v. Hood,* 745 S.W.2d 785 (Mo.App. 1988); *State v. Henderson,* 750 S.W.2d 555 (Mo. App.1988); *compare, State v. Herron,* 745 S.W.2d 835 (Mo.App.1988); *State v. Jackson,* 746 S.W.2d 429 (Mo.App.1988).

"compar[e] his observations and assessments of veniremen with those explained by the state" and to "focus all of the intuitive perceptions he has gathered" in evaluating the explanations offered by the state as neutral explanations. *Antwine*, 743 S.W.2d at 64–66.

To us, the record shows the trial court accepted the explanations offered by the prosecutor as accurately describing venireman Sewell. The fact Sewell was inattentive was sufficient to justify the prosecutor's peremptory strike. *Id.* at 67.

Once the trial court accepts the state's explanation, it becomes the duty of defendant to show that the explanation was pretextual. Because defendant failed to show the explanations offered by the state were pretextual, the trial court's decision on Sewell must be affirmed.

The facts relating to venirewoman Norton also support the trial court. In explaining his strike of Ms. Norton, the prosecutor said:

> Miss Lawnada Norton, number 833, also a black female on page three works at the city jail, knows very many employees, includes correctional officers and has heard stories. We talked at length with the types of stories she would have heard of what goes on at the jail, in the jail, how people get in the jail and so forth. And in addition she is a government employee working for the city and I find that objectionable, that is—you will see that's a general pattern through the strikes of the State.

Then, after defense counsel contended the prosecutor had not made a sufficient showing, the prosecutor responded:

> Specifically with regard to the woman who worked at the jail, I think it's a well known fact that people that work with criminals and convicts on a regular basis goes back to the principle where a kidnapped victim learns to associate with their kidnapper. I think a person that works at the jail may, in fact, become sympathetic with a person charged with a crime and that was my reason along with the fact that she is a government employee which is consistent throughout our strikes.

The state, on appeal, relies on three facts to support the prosecutor's strike: 1) Ms. Norton worked for the city; 2) her exposure to criminals might make her sympathetic to them; and 3) she had heard stories about what goes on in jail and how people get there.

Without evaluating the first two factors, we find the third factor is supported by the record and, as a logical matter, supports the trial court's determination that no *Batson* violation took place. During voir dire, Ms. Norton stated that she had heard stories about what goes on in jail and what happens to people when they get to jail. Arguably, this would cause Ms. Norton to view the evidence with uncritical sympathy toward defendant. The trial court would not be clearly erroneous in concluding this was a rational, neutral explanation for the prosecutor striking Ms. Norton. *State v. Antwine, supra* at 67.

Judgment affirmed.

SMITH, P.J., and STEPHAN, J., concur.