**STATE of Missouri, Respondent,**

v.

**Roderick BUSH, Appellant.**

**No. WD 56177.**

Missouri Court of Appeals,
Western District.

Nov. 30, 1999.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Krista D. Boston, Asst. Atty. Gen., Jefferson City, for respondent.

Before ALBERT A. RIEDERER, Presiding Judge, JAMES M. SMART, Jr., Judge, and JOSEPH M. ELLIS, Judge.

ALBERT A. RIEDERER, Presiding Judge.

Roderick Bush ("Appellant") was convicted, after jury trial, of first-degree burglary and armed criminal action and sentenced as a prior offender to fifteen years and life, respectively. On appeal, he claims that the verdict director for armed criminal action was defective and that it was plain error for the trial court to fail, *sua sponte*, to declare a mistrial when the state, he claims, argued that Appellant's Kansas residency was circumstantial evidence of his guilt. Affirmed.

### Procedural History

On July 25, 1997, Appellant was charged with first degree burglary, second-degree assault and armed criminal action. After a jury trial ended in a mistrial, Appellant was charged by amended information as a prior offender with armed criminal action and first degree burglary. He was convicted of both charges. The sufficiency of the evidence is not in dispute here. Viewed in the light most favorable to the verdicts, the following evidence was adduced.

Appellant was the brother-in-law of the girlfriend of one Damon Thomas who was charged in an unrelated crime. Danielle Duhart, resident of the apartment that Appellant was convicted of burglarizing, was a witness for the state in that unrelated crime. Duhart and a man named Michael Warner had a daughter together, and although they did not live together, Warner occasionally spent the night at Duhart's apartment. On one such night, March 4, 1997, the night before Duhart was to testify in Damon Thomas's trial, Warner woke to the sound of Duhart's screaming. Warner, who had been asleep in their daughter's bedroom, ran to Duhart's room, where he saw the silhouettes of two men. Warner wrestled with one of the intruders for a few seconds and chased him out of the apartment, but both men eventually got into a car and escaped. However, while Warner was giving chase, one of the men stumbled and dropped some papers which, as it turned out, included the Appellant's birth certificate, the Appellant's social security card and a car title belonging to the Appellant. After chasing the intruders off and upon reentering the apartment, Warner discovered Duhart bleeding from the back of her head. In her bedroom, they found a screwdriver and a hammer, neither of which belonged to them.

On July 25, 1997, Appellant was charged by indictment with one count each of first degree burglary, second-degree assault and armed criminal action. A trial was conducted on June 4, 1998, at the Circuit Court of Cole County, the Honorable Thomas J. Brown, III presiding. However, it ended in a mistrial after the jury failed to reach a unanimous verdict. Thereafter, on June 4, 1998, Appellant was charged by amended information with one count of first degree burglary, Section 569.160, and one count of armed criminal action, Section 571.015. A second trial was then held on July 17, 1998, at the Circuit Court of Cole County, the Honorable Byron L. Kinder presiding. This time, Appellant was convicted on both counts. This appeal ensued.

### I.

Appellant claims that the verdict director for armed criminal action was deficient in several respects. He complains first that the instruction did not require the jury to find that he committed the underlying felony of second degree assault. He also complains that the instruction improperly referred to accomplice liability. Third, he complains that the instruction does not include the mental state of "knowingly" for armed criminal action.

Appellant requests review under Rule 30.20, which allows this court, in its discretion, to consider plain errors affecting substantial rights when the court finds that the manifest injustice or a miscarriage of justice has resulted therefrom. Rule

30.20. Appellant argues that the manifest injustice here is that the instruction lowered the state's burden of proof by allowing it to obtain a conviction without requiring the jury to find every element of the offense charged.

### A. Verdict Director Required Proof of Underlying Felony

■ The trial court gave the following Instruction No. 8 to the jury as the verdict director for the charge of armed criminal action:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common *purpose of committing* that offense, or if, for the *purpose of committing* that offense, he aids or encourages the other person in committing it.

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about March 5, 1997, in the County of Cole, State of Missouri, the defendant or another person *attempted to cause physical injury* to Danielle Duhart by hitting her with a hammer, and

Second, that the defendant or the other person committed the conduct described in paragraph one through the use of a dangerous instrument, then you are instructed that the offense of armed criminal action has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of the offense of armed criminal action, the defendant acted alone or together with or aided the other person in committing that offense,

then you will find the defendant guilty under Count II of armed criminal action.

As used in this instruction, the term "dangerous instrument" means any instrument, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense. (Emphasis supplied)

Appellant now contends that the trial court's submission of this instruction was error because, he says, "it did not require the jury to find that Roderick committed the underlying felony of second degree assault...." We disagree. A person commits the crime of assault in the second degree if he attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument. Section 565.060.1(2). Instruction No. 8 required the jury to find every element of the offense of second degree assault as it is defined in the statute, even though the words "second degree assault" were not explicitly mentioned therein. Further, MAI CR 3d 332.02.3, titled, "WHERE NO 'UNDERLYING' FELONY IS CHARGED IN A SEPARATE COUNT," contemplates this exact situation and provides the form to be used. The trial court followed MAI precisely in this regard by using the verdict director of assault second degree (MAI CR 3d 319.12) to provide the elements of that crime within the verdict director of armed criminal action as required by Notes on Use number 2. MAI CR 3d 332.02 Notes on Use No. 2, (10–1–95). Thus, we conclude that instruction No. 8 did require proof of the elements of the underlying crime, and, therefore, there is no plain error, because there is no error at all.

### B. Verdict Director Properly Set Forth Accomplice Liability

■ Appellant next complains that the instruction improperly referred to accomplice liability. Specifically, he argues that "since the State alleged only that [Appellant] or 'another person' used the dangerous instrument, the MAI–CR 3d 332.02.3 must be modified to conform with MAI–CR 3d 304.04." MAI–CR 3d 332.02, Notes on Use 6. Instruction No. 8 was patterned after MAI CR 3d 304.04, as required. However, Appellant claims that instruction 304.04 was not followed; he claims that submission of Instruction No. 8 was error because the Notes on Use No. 6 under MAI CR 3d 332.02 require that "when using MAI CR 3d 304.04 in a verdict director for armed criminal action, always ascribe paragraph First to 'defendant and not to' defendant or another.'" However, although that language is now contained in Notes on Use No. 6, such was not the case at the time of this trial. That language was added to the Notes on Use after Appellant's trial. The trial court followed precisely the Notes On Use that were in effect at the time of Appellant's trial. There can be no error for not following Notes On Use which did not exist. Since there is no error, there is no plain error.

### C. Mental State

■ Finally, Appellant claims that Instruction No. 8 was deficient in that it failed to include the mental state for armed criminal action. He argues that since Section 571.015 does not prescribe a culpable mental state, the crime is committed if the defendant acted "knowingly." The only authority Appellant offers for this proposition is MAI CR 3d 332.02, Notes On Use No. 2. As noted above, that Note did not contain this language at the time of Appellant's trial, and, therefore, it cannot be authority for any such proposition. By contrast, there is longstanding authority that the requisite mental state for armed criminal action is purposely, knowingly or recklessly. *State v. Gilpin,*

954 S.W.2d 570, 580 (Mo.App.1997). In any event, Appellant argues that "paragraph Second of Instruction No. 8, which submits the elements of armed criminal action, contains *no* mental state." We disagree. The verdict director, in the first paragraph, uses the language, "attempted to cause physical injury." This language required the jury to find that the Appellant acted purposely. *State v. Manning,* 664 S.W.2d 605, 609 (Mo.App.1984); *State v. Webb,* 725 S.W.2d 901, 903 (Mo.App. 1987). We review Appellant's contention for plain error only, at the invitation of the Appellant, as it was not preserved for appeal. This court has held that where an indictment charges conduct *knowingly* done and verdict director which submits conduct *purposely* done, that is not such a variance as to result in manifest injustice to an accused. *State v. Saffold,* 639 S.W.2d 243, 249 (Mo.App.1982). Thus, assuming, without deciding, that Appellant is correct that the jury was required to find that Appellant acted knowingly, we conclude: (1) the jury found that Appellant acted purposely, and (2) that is not such a variance as to result in manifest injustice to the Appellant.

We decline to review for plain error. Rule 30.20. Point denied.

### II.

Appellant next claims the trial court erred and abused its discretion in failing to declare a mistrial, *sua sponte,* because the prosecutor tried to use Appellant's Kansas residency as circumstantial evidence of his guilt. Appellant argues that at various times, the prosecutor insinuated that the fact that Appellant was from Kansas was circumstantial evidence of guilt; that the prosecutor sought to evoke the type of cross-state hatred normally reserved for an MU–vs–KU sporting event; that the prosecutor sought to arouse the type of hostility for Kansas normally associated with the collegiate playing field; that this cross state hatred seeped through the entire case; and that the error was cumula-

tive and egregiously prejudicial. Aside from this hyperbole, the Appellant's real complaint is that "Roderick's Kansas residency was not evidence of *his* guilt as charged" (emphasis Appellant's).

Appellant complains that the prosecutor remarked in voir dire, "Or the fact that Mr. Bush is from Kansas, you know, a Jayhawker. Anybody here that would hold that against Mr. Bush? I see no hands." Appellant further complains that in opening statement the prosecutor told the jury that the victim, Ms Duhart, is "from our community, lived in our community . . . all her life," as opposed to "people from Kansas," and that he would prove that "Roderick Bush is from Kansas." Finally Appellant complains about the following remarks by the prosecutor in closing argument:

Now, what is there to suggest he's one of the men? Let's just think about it for a moment. Damon Thomas. A person who's going on trial from Kansas. This guy here is from Kansas. Not enough. I mean, I'm not suggesting that's enough. But if you're trying to figure out who did it, who was the person, you're going to have to have – is it going to be a complete stranger who starts to jump in the witness's house in the middle of the night?

Somebody who doesn't know the defendant on trial in this case, not only are they from Kansas, but there's a connection between Roderick Bush. Damon Thomas was on trial for the shooting of Michelle Lee. Not only is he from Kansas, but he's the brother-in-law of Bush's girlfriend. So not only are the two people from Kansas, but you have a separate connection.

The trial is scheduled to start the week of March 4 th. The trial actually occurs on March 5 th. And Roderick Bush from Kansas just happens to be in Jefferson City. Does that start to connect the dots? Is he a traveling salesman? Does he work in Jefferson City?

Appellant requests plain error review under Rule 30.20, which allows this court, in its discretion, to consider plain errors affecting substantial rights when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom. Rule 30.20. Appellant does not identify what manifest injustice or miscarriage of justice he alleges to be present here. We glean from his argument that he believes the manifest injustice is that the jury was asked to find him guilty for reasons "wholly unrelated to his guilt," i.e., his Kansas residency.

■ The error complained of is not plain error, for it is not error at all. Appellant admits the trial court has broad discretion in controlling the content of voir dire, opening statement and closing argument. *State v. Gray*, 887 S.W.2d 369, 382 (Mo. banc 1994) (opening statement); *State v. Hill*, 866 S.W.2d 160, 163 (Mo.App. 1993) (voir dire); *State v. Thomas*, 780 S.W.2d 128, 135 (Mo.App.1989) (closing argument). And Appellant admits that declaring a mistrial is a drastic remedy. *State v. Schneider*, 736 S.W.2d 392 (Mo. banc 1987). Here, however, there was no need for a mistrial. All of the prosecutor's references to the fact that Appellant was from Kansas were proper comments made in explanation of the crime and the facts supporting the State's case. In August 1993, Michelle Lee was shot and paralyzed by Damon Thomas, a resident of Kansas. Danielle Duhart, the victim in this case, witnessed the shooting done by Damon Thomas. Duhart was scheduled to testify against Damon Thomas the morning she was assaulted. The Appellant's social security card, birth certificate and a car title in his name were found outside Duhart's home where Appellant stumbled and fell when he was chased from Duhart's home. The Appellant was also from Kansas. Further, Damon Thomas was the brother-in-law of Appellant's girlfriend. Appellant stayed at a Jefferson City area motel during the period of the assault on Duhart. Each reference made to the Kansas resi-

dency of the Appellant was made to explain the evidence, that the Appellant and Damon Thomas were connected to each other, and not to generate hostility towards the Appellant.

The bare fact that Appellant was from Kansas was not argued as circumstantial evidence of his guilt. Rather, the prosecutor argued that the fact that Appellant was from the same place, Kansas, as the person against whom his victim was about to testify was circumstantial evidence the jury could consider. The connection between Appellant and Damon Thomas was not only that they both hailed form Kansas, but also other facts as well, and these are facts which the jury, under the state's theory of the case, were entitled to consider.

The prosecutor's remarks were proper. We decline to review for plain error. Point denied.

Affirmed.

All concur.